# Exhibit D

Town of Bernardston
Office of Selectmen
P. O. Box 504
Bernardston, Massachusetts 01337

December 16, 2003

Mr. Merle Kingsley                    Notice of Hearing

Dear Mr. Kingsley:        Jan. 07. 04   M.S.   P.B   JCP
                                              107. H. K.,

        Please be advised that the Board of Selectmen will conduct a hearing in executive session on Tuesday, December 30, 2003, at _____ p.m. in Bernardston at the Town Hall to discuss your discipline, and to hear charges brought against you as an employee.

        Specifically, it is alleged that you violated the state bidding process, as set forth in Massachusetts General Laws, Chapter 30B, by purchasing sand on behalf of the Town from Cersosimo Industries, Inc, ("Cersosimo") through a sole-source procurement. This was allegedly done through a sham quotation process, by which you created a Telephone Bid Sheet after you already reached a sole-source agreement with Cersosimo for the purchase of sand. It is further alleged that one of the quotes you listed on the Telephone Bid Sheet was never in fact made, and that you falsely claimed to have checked two references for the low bidder and found the low bidder's work to be unsatisfactory. Finally, it is alleged that you impeded an investigation by the Office of the Inspector General by providing false and misleading information to an investigator.

        These actions constitute violations of state law, and represent a failure to perform the essential duties of your job in a lawful, ethical and competent manner.

        The Board is considering discipline against you, up to and including termination from employment.

You have the right to request that the hearing be held in open session. You also have the right to be present in executive session during any discussions that pertain to you, to have counsel or a representative of your choice present, and to speak on your own behalf.

                                Sincerely,

                                John C Potter

                                Mota a Sm

                                Peter Guilotte
                                Bernardston Board of Selectmen

# Exhibit E



**Town of Bernardston**
**Office of Selectmen**
**P. O. Box 504**
**Bernardston, Massachusetts 01337**

December 16, 2003

Ms. Theresa Cahill

<u>Notice of Hearing</u>

Dear Ms. Theresa Cahill:

Please be advised that the Board of Selectmen will conduct a hearing in executive session on ~~Tuesday, December 30,~~ 2003, at _____ p.m. in Bernardston at the Town Hall to discuss your discipline, and to hear charges brought against you as an employee.

Specifically, it is alleged that you participated in the violation of the state bidding process, as set forth in Massachusetts General Laws, Chapter 30B, by drafting two false documents pertaining to the procurement of sand by the Town. It is further alleged that you created these documents after a sole-source procurement was made, and after the Town received notice of a bid protest relating to this procurement, so that there would be evidence to justify the purchase of the sand from Cersosimo Industries, Inc. Finally, it is alleged that you mislead the Office of the Inspector General by providing contradictory and inaccurate information to an investigator.

These actions constitute violations of state law, and represent a failure to perform the essential duties of your job in a lawful, ethical and competent manner.

The Board is considering discipline against you, up to and including termination from employment.

You have the right to request that the hearing be held in open session. You also have the right to be present in executive session during any discussions that pertain to you, to have counsel or a representative of your choice present, and to speak on your own behalf.

Sincerely,

Bernardston Board of Selectmen

# Exhibit F

## Affidavit of Jonathan Pineo

1.  My name is Jonathan Pineo.  I live at 21 Railroad Street, Bernardston, MA 01337.

2.  I am a member of the Bernardston Board of Health.  I have been on the Board for approximately two years.

3.  On Saturday, December 13, 2003, I was walking into the South Street Bakery in Bernardston with two other members of the Board of Health, Bob Eddy and Dave Powers.

4.  As we were walking into the bakery, we ran into Mike Snow.  Mr. Snow is a member of the Bernardston Board of Selectmen.

5.  Mr. Snow stopped and had a conversation with Bob, Dave and me.  During that conversation, Mr. Snow commented that the Board of Selectmen "had something on Theresa Cahill and Merle Kingsley."

6.  Mr. Snow stated that certain charges against Ms. Cahill and Mr. Kingsley would be discussed at a meeting on the following Tuesday, December 16, 2003.  Mr. Snow further stated that he didn't know whether the meeting would take place in executive session or not, but that whatever took place would not have to be kept secret.

7.  Based on Mr. Snow's comments, it was my impression that Ms. Cahill would no longer be working as the Administrative Assistant for the Town of Bernardston, and that Mr. Kingsley would no longer be working as Highway Superintendent for the Town of Bernardston.

8.  For these reasons, I do not believe that Mr. Snow can serve as an unbiased and impartial decision-maker at Ms. Cahill's hearing that is currently scheduled for January 7, 2004.

9.  At recent Board of Health meetings, Jack Patch, another member of the Bernardston Board of Selectmen, has stated that the Board of Selectmen is seeking a replacement for Ms. Cahill.

10. Mr. Patch has implied that the Town is seeking a permanent replacement for Ms. Cahill, not a temporary replacement.

11. Based on Mr. Patch's comments, it is my belief that he has already decided to terminate Ms. Cahill from her position as Administrative Assistant for the Town of Bernardston.

Jonathan Pineo Affidavit
Page 2 of 2

12.    For this reason, I do not believe that Mr. Patch can serve as an unbiased and impartial
       decision-maker at Ms. Cahill's hearing that is currently scheduled for January 7, 2004.

Signed under the pains and penalties of perjury, this 3rd day of January, 2004,

Jonathan Pineo

# Exhibit G

## Affidavit of Mr. Richard Steward

1. My name is Richard Steward. I live at 24 School Street, Bernardston, MA 01337.

2. I was a staff member with the Northwestern District Attorney's Office for 11 years, and presently have been an Investigator with the Massachusetts Attorney General's Office for 11 years.

3. I am a former member of the Bernardston Board of Selectmen. I served on the Board from May 1995 until May 2001. I was Chair of the Board for approximately 2 years.

4. While I was on the Board of Selectmen, Ms. Theresa Cahill was the Administrative Assistant for the Town of Bernardston.

5. I am familiar with the current allegations of wrongdoing against Ms. Cahill and the Highway Superintendent, Merle Kingsley. Specifically, I am aware that both Ms. Cahill and Mr. Kingsley are accused of fabricating documents in connection with the procurement of sand from Cersosimo Industries in the fall of 2000.

6. I am aware that Ms. Cahill and Mr. Kingsley live together, and have been in a relationship with each other for approximately ten years.

7. I know each of the three current Bernardston Selectmen: Jack Patch, Mike Snow, and Peter Brulotte.

8. I am aware that there is a hearing of the charges against Ms. Cahill scheduled for January 28, 2004, and that Jack Patch, Mike Snow, and Peter Brulotte will serve as the decision-makers at that hearing.

9. I am aware of an effort in 1995 involving a business owned and operated by Mr. Snow to manufacture a cause for dismissal of Merle Kingsley. As Hearing Officer in Mr. Kingsley's disciplinary hearing at that time, I determined that the charges against Mr. Kingsley were specious. I believe that Mr. Snow was connected to the fabrication of the charges against Mr. Kingsley.

10. At a Selectmen's meeting that I attended in 2003, I heard Mr. Snow admit to following Mr. Kingsley around and examining individual potholes in the roads. I believe the purpose of this was to ridicule and embarrass Mr. Kingsley in an open meeting, rather than discuss it with him in a private conversation.

11. I have a signed copy of a statement from Ms. Cahill in which she relates a conversation between Mr. Snow and the Bernardston Town Treasurer, Judy Beckwith, during which Mr. Snow discussed installing his brother, Kevin Snow, as Superintendent of the Highway Department, the position currently held by Mr. Kingsley. Mr. Snow is aware

Affidavit of Richard Steward
Page 2 of 3

that this written statement exists and has been circulated.

12.  For these reasons, and because the charges against Mr. Kingsley and Ms. Cahill are based on the same set of facts, I believe that Mr. Snow is biased regarding the charges against Mr. Kingsley and Ms. Cahill and cannot be an impartial or unbiased decision-maker at their hearing.

13.  Before becoming a Selectman, Mr. Brulotte was the Chief of the Bernardston Police Department. In 1995, I heard Mr. Brulotte state that, as a result of the disciplinary hearing against Mr. Kingsley, "we'll finally be able to get rid of the little prick." As long ago as 1993, Mr. Brulotte swore he would "get" Mr. Kingsley.

14.  During most of my tenure on the Board of Selectmen, Mr. Brulotte was the Chief of the Bernardston Police Department, and shared a building with the Highway Department. During that time, there was constant friction between Mr. Brulotte and Mr. Kingsley over the operation and maintenance of the building. Mr. Brulotte constantly complained about Mr. Kingsley and made derogatory comments about him, both professionally and personally.

15.  It is my belief that Mr. Brulotte is prejudiced against any operation of the Highway Department by Mr. Kingsley. For this reason, and because the charges against Mr. Kingsley and Ms. Cahill are based on the same set of facts, I believe that Mr. Brulotte is biased regarding the charges against Ms. Cahill and cannot be an impartial or unbiased decision-maker at their hearing.

16.  In May 2003, I was present at the Bernardston Town Meeting where Mr. Patch sought to decrease Ms. Cahill's hours from full-time to part-time. Prior to that time, I had witnessed Mr. Patch berate and demean Ms. Cahill at Selectmen's meetings.

17.  Ms. Cahill has sought my advice about various incidents during which Mr. Patch frightened her by yelling loudly, standing close to her and shaking his hand in her face, and otherwise harassing her. Ms. Cahill informed me of one incident in which Mr. Patch vacuumed around her for approximately two hours.

18.  I also believe that, during the Summer of 2003, the current Board of Selectmen invented another excuse to berate Mr. Kingsley by claiming that he made an entry on a time sheet that, in fact, he never made. The three current Selectmen conducted themselves in such a manner that brought an admonition from the District Attorney's Office for violating the Open Meetings Law.

19.  For these reasons, I believe that Mr. Patch is biased regarding the charges against Ms. Cahill and Mr. Kingsley and cannot be an impartial or unbiased decision-maker at their

Affidavit of Richard Steward
Page 3 of 3

hearing.

Signed under the pains and penalties of perjury this 9th day of January, 2004,

Richard Steward

# Exhibit H

## Affidavit of Mr. William H. Shores

1.  My name is William H. Shores. I live at 727 Brattleboro Road, Bernardston, MA 01337.

2.  I am a former member of the Bernardston Board of Selectmen. I served on the Board from May 1973 until May 1982; from May 1988 until May 1994; and from May 1997 until May 2003. I was most recently Chair of the Board from May 2001 until May 2002.

3.  While I was on the Board of Selectmen, Ms. Theresa Cahill was the Administrative Assistant for the Town of Bernardston.

4.  I am familiar with the current allegations of wrongdoing against Ms. Cahill and the Highway Superintendent, Merle Kingsley. Specifically, I am aware that both Ms. Cahill and Mr. Kingsley are accused of fabricating documents in connection with the procurement of sand from Cersosimo Industries in the fall of 2000.

5.  I am aware that Ms. Cahill and Mr. Kingsley live together, and have been in a relationship with each other for approximately ten years.

6.  I know each of the three current Bernardston Selectmen: Jack Patch, Mike Snow, and Peter Brulotte.

7.  I am aware that there is a hearing of the charges against Ms. Cahill scheduled for January 7, 2004, and that Jack Patch, Mike Snow, and Peter Brulotte will serve as the decision-makers at that hearing.

8.  I am aware that Selectman Mike Snow's brother, Kevin Snow, works for the Highway Department, and will be eligible for the Superintendent position if Merle Kingsley loses his job. I am aware that Mike Snow has previously made comments indicating that he would like his brother Kevin to have the position of Superintendent.

9.  For this reason, and because the charges against Mr. Kingsley and Ms. Cahill are based on the same set of facts, I believe that Mike Snow has a conflict of interest regarding the charges against Ms. Cahill and cannot be an impartial or unbiased decision-maker at her hearing.

10. Furthermore, I believe that Selectman Peter Brulotte has a longstanding personal grudge against Mr. Kingsley. For example, as long ago as 1993, Mr. Brulotte swore he would "get" Mr. Kingsley. Mr. Brulotte has made many additional negative comments about Mr. Kingsley.

11. For that reason, I believe that Mr. Brulotte has a conflict of interest regarding the charges against Ms. Cahill and cannot be an impartial or unbiased decision-maker at her hearing.

Affidavit of William H. Shores
Page 2 of 2

12.    I am also aware that Selectman Jack Patch may be called to testify as a witness at Ms. Cahill's hearing, and that he has publicly and privately made statements indicating that he expects to terminate Ms. Cahill from her position. I am also aware that Mr. Patch has long desired and attempted to remove Ms. Cahill from her Administrative Assistant position.

13.    For these reasons, I believe that Mr. Patch has a conflict of interest regarding the charges against Ms. Cahill and cannot be an impartial or unbiased decision-maker at Ms. Cahill's hearing.

Signed under the pains and penalties of perjury this 2nd day of January, 2004,


William H. Shores

# Exhibit I

## Affidavit of Ms. Janice Leh

1.  My name is Janice Leh.  I live at 900 Brattleboro Road, Bernardston, MA 01337.

2.  I am a former member of the Bernardston Board of Selectmen.  I served on the Board from May 1999 until May 2001.  I was Chair of the Board from May 2000 to May 2001.

3.  While I was on the Board of Selectmen, Ms. Theresa Cahill was the Administrative Assistant for the Town of Bernardston.

4.  I am familiar with the current allegations of wrongdoing against Ms. Cahill and the Highway Superintendent, Merle Kingsley.  Specifically, I am aware that both Ms. Cahill and Mr. Kingsley are accused of fabricating documents in connection with the procurement of sand from Cersosimo Industries in the fall of 2000.

5.  I am aware that Ms. Cahill and Mr. Kingsley live together, and have been in a relationship with each other for approximately ten years.

6.  I know each of the three current Bernardston Selectmen: Jack Patch, Mike Snow, and Peter Brulotte.

7.  I am aware that there is a hearing of the charges against Ms. Cahill scheduled for January 28, 2004, and that Jack Patch, Mike Snow, and Peter Brulotte will serve as the decision-makers at that hearing.

8.  I am aware that Mr. Snow's brother, Kevin Snow, works for the Bernardston Highway Department.  In 2003, Teri called me from home after leaving Bernardston Town Hall and told me that she had overheard a conversation between Mr. Snow and Judy Beckwith, the Town Treasurer.  Mr. Snow stated that, once Mr. Kingsley is gone, Mr. Snow's brother Kevin could become the Highway Superintendent, but that other people would need to help him with the paperwork.

9.  At Selectmen's meetings, Mr. Snow constantly attacked the quality of Mr. Kingsley's work on the Highway Department.  He went so far as to get a retired Highway Department employee from Gill, Ernie Hastings, to check Mr. Kingsley's work.  Mr. Snow has followed Mr. Kingsley around town and harassed him concerning the quality of his work.

10. For this reason, and because the charges against Mr. Kingsley and Ms. Cahill are based on the same set of facts, I believe that Mike Snow has a conflict of interest regarding the charges against Ms. Cahill and Mr. Kingsley and cannot be an impartial or unbiased decision-maker at their hearing.

Affidavit of Janice Leh
Page 2 of 2

11.    When I was on the Bernardston Planning Board in or around 1993, I was aware of a strong animosity between Mr. Brulotte and Mr. Kingsley. At the time, Mr. Brulotte and Mr. Kingsley worked in the same building, and Mr. Brulotte would frequently make negative comments about Mr. Kingsley, and would belittle him.

12.    For that reason, and because the charges against Mr. Kingsley and Ms. Cahill are based on the same set of facts, I believe that Mr. Brulotte is biased against Ms. Cahill and Mr. Kingsley and cannot be an impartial or unbiased decision-maker at their hearing.

13.    I am aware that Mr. Patch has consistently bullied, harassed, and belittled Ms. Cahill in an effort to make her quit her job. In one episode in 2003, Mr. Patch vacuumed around Ms. Cahill for two hours. At other times, Mr. Patch would sit on the edge of Ms. Cahill's desk while she was working and watch her. Mr. Patch's actions upset and intimidated Ms. Cahill. On several occasions, she called me crying about Mr. Patch's actions.

14.    On one occasion, Ms. Cahill was so distraught about Mr. Patch's actions that I called the police to check on her at work to see if she was all right.

15.    At a Selectmen's meeting two years ago, Mr. Patch stated that Ms. Cahill must tell Mr. Kingsley everything that the Selectmen the talk about, because they are "bed partners." Mr. Patch made this comment in a demeaning and derogatory manner.

16.    To the best of my knowledge and belief, Mr. Patch has a grudge against Mr. Kingsley and would like to remove him from his position as Superintendent of the Highway Department.

17.    For these reasons, I believe that Mr. Patch is biased against Ms. Cahill and Mr. Kingsley and cannot be an impartial or unbiased decision-maker at their hearing.

Signed under the pains and penalties of perjury this 9th day of January, 2004,

Janice A. Leh
Janice Leh

# Exhibit J

# The Recorder

*Est. 1792*

Thursday, January 8, 2004

50 Cents / 45 Cents Home Delivery

20 Pages

Greenfield, Massachusetts

213th Year - No.

## Bernardston hearing heads to court

### Board members say 'no' to request from employees' lawyers to recuse themselves

By JANET BOND
Recorder Staff

BERNARDSTON — "Wait! Wait! Don't leave," called out Mary Lightner to the angry and disappointed throng gathered at Town Hall.

"Thanks for wasting my damn time," one man was overheard saying.

The selectmen had moved the midday Wednesday disciplinary hearing of two employees behind closed doors, leaving the hundred people who came to attend the hear-

ing in momentary disarray.

In what had apparently been a planned maneuver, Administrative Assistant Theresa Cahill and her lawyer Edward Berlin, along with Highway Superintendent Merle Kingsley and his lawyer Alexander Nappan went into an executive session with the three selectmen and the town's lawyer, David Jenkins, of the Boston law firm Kopelman and Paige.

The hearing had been called to review charges that Cahill and Kingsley violated state bidding laws in the purchase of winter sand, from Cersosimo Industries Inc. of

Brattleboro, Vt. in the fall of 2000.

The hearing would also review whether Cahill and Kingsley covered up the violation once they knew it was being investigated in the spring of 2001.

During the executive session, residents and other interested persons milled about talking.

Michael Risch announced to residents that a petition was circulating calling for the resignation of the selectmen and asking anyone who was interested in signing to do so.

After a half-hour, the lawyers, selectmen, Cahill and Kingsley returned from what had been Cahill's office and selectmen's Chairman John C. Patch called the meeting back to order.

See HEARING back page this section

### Residents demand recall

By JANET BOND
Recorder Staff

BERNARDSTON — Within two hours, residents of Bernardston had obtained the resignation of all three of the selectmen.

By petition, the town demanded the resignation of all three members, John C. Patch, William Michael Sichtermann, Peter Barolola.

That was Patch's comment to a reporter on the three-member board this section.

# WARN





A pony rubs his nose on a cat Budapest, Hungary on Wed the morning hours in some

## Bush ama

From Page 1

asking for sealed sand bids and the second an unsigned letter from Kingsley accepting a particular bid.

Sullivan said the two documents were apparently created by Cahill days after the town was notified in March 2001 that the IG's office was looking into a complaint about the town's sand purchase.

Kingsley and Cahill were surprised and delighted by the number of people who turned out for the hearing.

"That was wonderful. It makes me feel good to have all that," said Kingsley.

Cahill said she was surprised at the number of people who came given the 1 p.m. timing of the hearing. "Friends took time off from work. I want to thank everyone for their support. Bernardiston is a lovely community. The people of Bernardiston really care," she said.

You can reach Janet Bond at: jbond@recorder.com or (413) 772-0261 Ext.263.



KINGSLEY



SNOW

JENKINS

CAHILL

BERLIN

## Hearing

From Page 1

Patch told the group that the hearing had been postponed until Jan. 28 at 5 p.m. in the Bernardiston Elementary School cafeteria.

Patch said the board had been asked to recuse itself from the hearing as hearing officers.

"We denied that in a vote of 3 to 0," he said, bringing his hammer to the gavel to quell the jeers and call the audience back to order.

The second motion, he said, was to ask the town's lawyer to subpoena investigators from the Inspector General's office.

Patch said the selectmen voted to approve that request 3 to 0.

The selectmen recessed into a second executive session to discuss strategy, and again resident Mark Raymond encouraged the audience to stay, saying the board would like to see an empty room when they emerged.

Both Berlin and Nappan said one reason they wanted the board to recuse itself was because they wanted to call Patch as a witness.

A second reason is the lawyers' doubts about the board's ability to be fair and objective.

"Mr. Patch said at the next hearing, discipline will be handed out. That means he's already made up his mind that Mr Kingsley has broken the law. He's not keeping an open mind," said Nappan, referring to a statement made by Patch at the Dec. 30 meeting when the charges against Kingsley and Cahill were read.

"I'm dismayed. I had hoped they would do the right thing (and recuse themselves) to be fair, for a perception of fairness," said Berlin.

Berlin also pointed out that Selectman Michael Snow's brother Kevin Snow works at the Highway Department and that raises the possibility that Selectman Snow might be biased. Berlin clarified that Michael Snow might have ambitions for his brother to succeed Kingsley if the highway superintendent were fired.

Because the selectmen would not recuse themselves, Nappan and

Berlin are moving to Plan B. They will go to Superior Court to ask for a restraining order to keep the selectmen from continuing as hearing officers and they will ask a judge to appoint an independent hearing officer to hear the charges against Cahill and Kingsley.

Kingsley and Cahill have been on paid administrative leave since Dec. 12 pending a disciplinary hearing after a report from the IG's office advocated their dismissal. The IG's investigation was, in part, a rehash of a 2001 investigation of the town's procedure in purchasing winter road sand.

In the 2001 investigation, the town was sent a letter from a lawyer in the IG's office chiding the board for not following proper bidding procedure and requiring the town to stop paying for the sand purchased outside the bidding procedure.

As a result of the IG's findings, the town sent a letter to the supplier who won the county bid and a check for $750 to cover that company's legal fees.

The second investigation was instigated in 2003 by Patch, who found information when backing up an office computer that pointed to an alleged coverup of the original 2000 winter sand purchase. As Patch has said, he sent the files he discovered on Cahill's computer to the IG's office, which launched the second investigation.

In a letter Inspector General Gregory W Sullivan sent to Patch at his home, Sullivan said Kingsley had covered up his sole-source purchase with a sham telephone quote sheet.

Sullivan also said Cahill had created two documents, one a legal notice

Recall    From Page 1

## Deaths

### Donald J. McQuade, former sheriff

COLRAIN — Donald J McQuade, 75, of 7 Main Road, died Wednesday (1-7-04), at Franklin Medical Center in Greenfield.

Arrangements, under the direction of Smith-Kelleher Funeral Home of Shelburne Falls/Greenfield, were incomplete at press time.

### B. Jayne Boden

WILBRAHAM — B. Jayne (Saczawa) Boden, 85, of Wilbraham, formerly of Springfield and Chicopee, died Sunday (1-4-04), at Wingate at Wilbraham. She was the mother of Ann Russo of South Deerfield.

Born in Chicopee, Sept. 24, 1918, she was the daughter of John and Joanna (Pietras) Saczawa. She was educated in Chicopee.

Boden was a former active parishioner of Holy Name Church in Springfield and held various offices with the Holy Name Women's Club. She was a communicant of St. Cecilia's Church in Wilbraham and previously served as past president of St. Cecilia's Women's Club. She was also an active volunteer with the annual Catholic Appeal.

She was a noted prize-winning artist who enjoyed oil painting and stenciling. She also enjoyed needlepoint, refinishing furniture, sewing, cooking, opera, gardening and flower arranging for the Wilbraham Library and the Wilbraham Peach Festival.

Her husband, Frank J. Boden, died in 1965.

Besides her daughter, she leaves two sons, Frank J. Jr., of Boise, Idaho, and Peter J. of Weymouth and Wilbraham; a brother, Peter Saczawa of Chicopee; six grandchildren, Michael A. Boden of Boise, Monica Boden of Springerville, Ariz., Kenneth Boden of Boise, Dr. Maria Russo-Appel of East Longmeadow, Tanya Bolston of Chicopee and Julianna Russo of South Deerfield; seven great-grandchildren, and many nieces and nephews.

A Liturgy of Christian Burial will be held at 10 a.m. in St. Cecilia's Church. Committal services will follow in Woodland Dell Cemetery, both in Wilbraham.

A Liturgy of Christian Burial will be held at 10 a.m. in St. Cecilia's Church. Committal services will follow in Woodland Dell Cemetery, both in Wilbraham.

Calling hour at the Sampson's Chapel of the Acres, 21 Tinkham Road, Springfield, will be Saturday from 8:30 to 9:30 a.m.

Memorial contributions are suggested to the charity of the donor's choice.

## Sean R. Manjourea

ATHOL — Sean R. Manjourea, 17, of 387 South Athol Road, died Monday (1-5-04), at Athol Memorial Hospital.

He was born in Greenfield, Dec. 11, 1986, and was a lifelong resident of Athol.

Manjourea attended Athol High School where he was MANJOUREA involved with the wrestling team. He played football for both Pop Warner and the Athol Middle School and played baseball with the Chuck Stone Little League and the Athol Middle School.

He enjoyed dirt bikes and cars.

Survivors include his father and stepmother, Robert A. Jr. and Lori A. Manjourea of Orange; his mother and stepfather, Robert and MaryJane (Herron) Durling of Las Vegas, Nev.; a brother, Brandon R. of Bethel, Maine; three sisters, Trisha M. Manjourea of Athol, with whom he lived, Kristen L. of Athol and Brittni R. of Orange; two step-brothers, Carlos V. Rivera and Alberto L. Rivera, both of Orange; three step-sisters, Kimberly M. Feeley, Evelyn M. Rivera and Aliah V. Rivera, all of Orange; his paternal grandparents, Robert A. Manjourea of Orange and Dee (Stevens) Cox and her husband, Tal, of Athol; paternal great-great-grandmother Ada (Dresser) Miner of Greenfield; many aunts, uncles and cousins and a niece.

## Recall

### From Page 1

■ A handful of residents began circulating the petition after learning the selectmen had put Highway Superintendent Merle Kingsley and Administrative Assistant Theresa Cahill on paid administrative leave effective Dec. 12.

lead the recall drive. To begin a recall, she will have to collect the signatures of at least 50 registered voters on an affidavit that names the two selectmen and the reasons they are being recalled.

Rockwood is using a home-rule bill passed by the Legislature this week, based on the town's second request to have the power to recall elected officials.

Only Brulotte and Snow are eligible for recall because Patch has less than five months left in his term, according to conditions of the legislation.

The selectmen received the petitions in silence.

"We, the undersigned taxpayers, registered voters, or residents of Bernardston do file this official petition against the present Board of Selectmen ... and DEMAND your immediate resignation due to your continuous inability to professionally manage our town and its employees and to provide for the public safety and welfare for the inhabitants of the Town of Bernardston," reads the petition.

A handful of residents, including Rockwood and former Selectman Janice Leh, began circulating the petition after learning the selectmen had put Highway Superintendent Merle Kingsley and Administrative Assistant Theresa Cahill on paid administrative leave effective Dec. 12.

The decision to proceed with a recall came only with the news on

## China finds 2nd suspected SARS case

Tuesday that the bill had become law.

The selectmen's meeting followed the first part of a disciplinary hearing for Kingsley and Cahill, who are charged with violating the state bidding process in the purchase of winter sand in the fall of 2000 and attempting to cover-up their actions in the spring of 2001.

During an executive session agreed to by Kingsley and Cahill's lawyers, resident Michael Risch told the hundred or more people gathered at Town Hall that the petition was circulating if anyone wanted to sign it.

The decision to present the petitions to the selectmen on Wednesday was apparently made on the spot and announced by Mark Raymond to the group when the selectmen went into their second executive session to talk with the town's lawyer David Jenkins, of Kopelman and Paige.

Raymond urged the assembled to stay because "it's your tax dollar," he said referring to the legal fees the town would pay Kopelman and

## Bush and campaign

By SHARON THEIMER
Associated Press

WASHINGTON — President, with no challenger for the Republican presidential nomination, begins a 2004 election year with a $100 million in the bank and an even grander plan to raise millions more.

While the nine hopefuls competing for the Democratic nomination have spent much of the money they've taken in, Bush's cash-on-hand shows he's spent a fraction: A record $130.8 million he raised last year.

Bush plans to raise $150 million to $170 million in all. He hit the fundraising trail again this week with events in St. Louis; Knoxville, and Palm Beach, Fla. Three more events to come.

"We think this is what we need to be able to build the kind of grass roots effort we need to kind of get the president's message in to this divided nation," campaign manager Ken Mehlman said. "We are a closely divided nation. We have a campaign that reflects that."

Mehlman, who is keeping a close watch on spending by Democratic and other interest groups active in the race, declined to say whether Bush would stop raising money when he reaches his goal. Bush has received contributions from every state and some territories, Mehlman said.

Much of Bush's money comes thanks to a network of business executives, lobbyists, attorneys and

### From Page 1

Paige for Jenkins' services.

Raymond told the group that he didn't like the way the selectmen were "dealing with our tax dollars" and that was why he was behind the move to demand their resignation.

"The petitions will be handed in today," he said.

Asked what his response was to the hearing and the demand for resignation, Patch said, "I just wish that people would read the Inspector General's report and it's very clear ..." He stopped himself from continuing.

Asked for his feelings about the experience and what motivates him to continue, Patch pulled his wallet out of his back pocket and sifted through slips of paper in the bill fold. He said he was looking for the oath he took on being elected, but he couldn't find it.

"It is not pleasurable at all. No, I took an oath to uphold the laws of the Commonwealth and any law or bylaw of the town and that's whether I like it or not. That's part of the job."

