Commonwealth of Massachusetts
FRANKLIN SUPERIOR COURT
Case Summary
Civil Docket

## FRCV2004-00003
### Cahill et al v Snow(Mem of Bernardston Bd of Selectmen) et al

| | | | | |
|---|---|---|---|---|
| **File Date** | 01/13/2004 | **Status** | Disposed: transfered to other court (dtrans) | |
| **Status Date** | 02/09/2004 | **Session** | A - Civil A - CtRm 1 | |
| **Origin** | 1 | **Case Type** | E99 - Miscellaneous | |
| **Lead Case** | | **Track** | X | |

| | | | | | |
|---|---|---|---|---|---|
| **Service** | 04/12/2004 | **Answer** | 06/11/2004 | **Rule12/19/20** | |
| **Rule 15** | | **Discovery** | | **Rule 56** | |
| **Final PTC** | 07/11/2004 | **Disposition** | 08/10/2004 | **Jury Trial** | No |

### PARTIES

**Plaintiff**
Theresa Cahill
Active 01/13/2004

**Private Counsel 039900**
Edward F Berlin
278 Main Street
Suite 205
Greenfield, MA 01301
Phone: 413-774-4800
Fax: 413-772-2558
Active 01/13/2004 Notify

**Plaintiff**
Merle Kingsley
Active 01/13/2004

**Private Counsel 366900**
Alexander Z Nappan
278 Main Street
Suite 205
Greenfield, MA 01301
Phone: 413-774-4800
Fax:
Active 01/13/2004 Notify

**Defendant**
Michael Snow(Mem of Bernardston Bd of Selectmen)
Service pending 01/13/2004

**Private Counsel 654195**
Sarah N Turner
Kopelman & Paige PC
31 Saint James Avenue
Park Square Building 7th floor
Boston, MA 02116
Phone: 617-556-0007
Fax: 617-654-1735
Active 02/09/2004 Notify

**Defendant**
John Patch (Mem of Bernardston Bd of Selectmen)
Service pending 01/13/2004

*** See Attorney Information Above ***

MAS-20031124 Case 3:04-cv-30024-MAP Document 2 Filed 02/10/2004 Page 2 of 20 02/09/2004
scottshi 0:23 PM

Commonwealth of Massachusetts
FRANKLIN SUPERIOR COURT
Case Summary
Civil Docket

# FRCV2004-00003
## Cahill et al v Snow(Mem of Bernardston Bd of Selectmen) et al

| Defendant | *** See Attorney Information Above *** |
|---|---|
| Peter Brulotte (Mem of Bernardston Bd of Selectmen)<br>Service pending 01/13/2004 | |

### ENTRIES

| Date | Paper | Text |
|---|---|---|
| 01/13/2004 | 1.0 | COMPLAINT & civil action cover sheet filed |
| 01/13/2004 | | Origin 1, Type D99, Track F. |
| 01/13/2004 | | Track changed to X, Origin 1, Type E99. |
| 01/13/2004 | 2.0 | Plaintiffs' emergency MOTION for Temporary Restraining Order pursuant to M.R.C.P 65 |
| 01/13/2004 | 3.0 | MEMORANDUM in Support of Plaintiffs' Motion for Temporary Restraining Order. |
| 01/13/2004 | 4.0 | REQUEST for Short Order of Notice |
| 01/13/2004 | | MOTION (P#4) ALLOWED (C. Brian McDonald, J.) |
| 01/14/2004 | | Summons - Order of Notice issued; returnable 1/20/04, at 2:00 p.m. |
| 01/15/2004 | 5.0 | SUMMONS/ORDER OF NOTICE returned by Atty Edward Berlin for plaintiff Theresa Cahill as to all defendants (Mem of Bernardston Bd of Selectmen); service by agreement of defendants attorney, David Jenkinson, by express mail and certified mail on January 14, 2004 to Kopelman Paige, P.C. 31 St. James Avenue, Boston, MA 02116-4102 |
| 01/15/2004 | 6.0 | SUMMONS/ORDER OF NOTICE returned by Attorney Alexzander Z. Nappan for plaintiff Merle Kingsley, as to all defendants (Members of the Bernardston Board of Selectmen; service by agreement of defendants attorney, David Jenkins, by express mail and certified mail on January 14, 2004 to Kopelman & Paige, P.C. 31 St. James Avenue, Boston, MA 02116-4102. |
| 02/06/2004 | 7.0 | Attested copy of NOTICE of Removal to the U.S. District Court. |
| 02/06/2004 | 8.0 | Written Notice of Removal to Federal Court. |
| 02/09/2004 | 9.0 | Atty Sarah N Turner's notice of appearance for Michael Snow(Mem of Bernardston Bd of Selectmen), John Patch (Mem of Bernardston Bd of Selectmen), and Peter Brulotte (Mem of Bernardston Bd of Selectmen) |
| 02/09/2004 | | Attested copies sent to U.S. District Court. |
| 02/09/2004 | | Case REMOVED this date to US District Court of Massachusetts |

### EVENTS

| Date | Session | Event | Result |
|---|---|---|---|
| 01/20/2004 | Civil A - CtRm 1 | Motion/Hearing: miscellaneous<br>Motion for Temporary Restraining Order | Event not held-joint request |

| CIVIL ACTION COVER SHEET | Trial Court of Massachusetts SUPERIOR COURT DEPARTMENT County: Franklin | Docket Number |
|---|---|---|

**PLAINTIFF(S)** Theresa Cahill and Merle Kingsley

**DEFENDANT(S)** Michael Snow, John Patch and Peter Brulotte

**ATTORNEY, FIRM NAME, ADDRESS AND TELEPHONE**
Edward F. Berlin - The Law Firm of Edward F. Berlin, 20 Federal St, Greenfield, MA 01301
Board of Bar Overseers number: 039900

**ATTORNEY** (if known)
David Jenkins, Esq.

### Origin code and track designation

Place an x in one box only:
- [✓] 1. F01 Original Complaint
- [ ] 2. F02 Removal to Sup.Ct. c. 231, s.104 (Before trial)
- [ ] 3. F03 Retransfer to Sup.Ct. C.231,s.102C (X)
- [ ] 4. F04 District Court Appeal c.231, s. 97 &104 (After trial) (X)
- [ ] 5. F05 Reactivated after rescript;relief from judgment/Order (Mass.R.Civ.P. 60) (X)
- [ ] 6. E10 Summary Process Appeal (X)

### TYPE OF ACTION AND TRACK DESIGNATION (See reverse side)

| CODE NO. | TYPE OF ACTION (specify) | TRACK | IS THIS A JURY CASE? |
|---|---|---|---|
| E99 | Complaint in equity - Due process violations | (X) | ( ) Yes  (✓) No |

The following is a full, itemized and detailed statement of the facts on which plaintiff relies to determine money damages. For this form, disregard double or treble damage claims; indicate single damages only.

### TORT CLAIMS
(Attach additional sheets as necessary)

A. Documented medical expenses to date:
  1. Total hospital expenses ............ $............
  2. Total Doctor expenses ............ $............
  3. Total chiropractic expenses ............ $............
  4. Total physical therapy expenses ............ $............
  5. Total other expenses (describe) ............ $............
     Subtotal $............
B. Documented lost wages and compensation to date ............ $............
C. Documented property damages to date ............ $............
D. Reasonably anticipated future medical and hospital expenses ............ $............
E. Reasonably anticipated lost wages ............ $............
F. Other documented items of damages (describe)
     $............
G. Brief description of plaintiff's injury, including nature and extent of injury (describe)

     $............
     TOTAL: $ 0

### CONTRACT CLAIMS
(Attach additional sheets as necessary)
Provide a detailed description of claim(s):

TOTAL $ 0

PLEASE IDENTIFY, BY CASE NUMBER, NAME AND COUNTY, ANY RELATED ACTION PENDING IN THE SUPERIOR COURT DEPARTMENT

"I hereby certify that I have complied with the requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods."
Signature of Attorney of Record _____  DATE: 1/13/04

A.O.S.C. 2003

A TRUE COPY ATTEST

Doris G. Doyle
CLERK

COMMONWEALTH OF MASSACHUSETTS
DEPARTMENT OF THE TRIAL COURT

FRANKLIN, ss.   SUPERIOR COURT
GREENFIELD DIVISION
Civ. No. 04- 003

---

THERESA CAHILL and MERLE )
KINGSLEY, )
    Plaintiffs, )   VERIFIED COMPLAINT
)
v. )
)
MICHAEL SNOW, JOHN PATCH, and )
PETER BRULOTTE,[1] )
    Defendants )

---

### INTRODUCTION

1. This action arises out of the plans of the defendants, members of the Bernardston Board of Selectmen, to sit as judges in an upcoming disciplinary hearing of charges against the plaintiffs, employees of the Town of Bernardston, despite the fact that all defendants are biased against the plaintiffs, have conflicts of interest, and have publicly stated that they have already decided the plaintiffs have violated the law and will be terminated from their positions. The defendants' plans to judge the plaintiffs violate the plaintiffs' constitutional due process right to a fair hearing with unbiased decision-makers. For this reason, the plaintiffs seek to permanently enjoin the defendants from sitting as judges at their hearing on January 28, 2004, and seek the appointment of an impartial hearing officer.

### PARTIES

2. The plaintiff, Theresa Cahill ("Cahill"), is a natural person who resides at 35 Lillian's Way, Erving, MA 01344.

3. The plaintiff, Merle Kingsley ("Kingsley"), is a natural person who resides at 35 Lillian's Way, Erving, MA 01344.

4. The defendant, Michael Snow ("Snow"), is a natural person who resides at 287 Bald Mountain Road, Bernardston, MA 01337.

---

[1] In their capacities as members of the Bernardston Board of Selectmen.

A TRUE COPY ATTEST

*[signature]* Doyle
CLERK

5.  The defendant, John Patch ("Patch"), is a natural person who resides at 11 Harwood Drive, Bernardston, MA 01337.

6.  The defendant, Peter Brulotte ("Brulotte"), is a natural person who resides at 474 Bald Mountain Road, Bernardston, MA 01337.

## STATEMENT OF FACTS

7.  Cahill has worked as an Administrative Assistant for the Town of Bernardston since 1986. She has had no previous disciplinary actions taken against her at any point during her seventeen years of employment, and has an unblemished personnel record. She is a member of the county retirement system.

8.  Kingsley has been the Highway Superintendent for the Town of Bernardston for the past 10 years. He is currently reappointed to this position for a fixed term of one year. His current term expires in March 2004.

9.  In the fall of 2000, the Town of Bernardston was given the option of participating in a collaborative bidding process, coordinated by the Franklin Regional Council of Governments ("the COG"), for the purchase of winter sand.

10. Kingsley determined that he did not want to participate in the collaborative bidding process. For that reason, he did not return the form that the COG had mailed to him.

11. A COG staffperson, in the mistaken belief that the Town of Bernardston had simply forgotten to return the form, submitted that form on Bernardston's behalf, so that Bernardston was included in the bidding process for winter sand.

12. At some point in the fall of 2000, the COG informed the Town of Bernardston that it had been included in the bidding process, and that the lowest bidder in the sand contract was Robert Mitchell ("Mitchell").

13. Kingsley and other members of the Bernardston Town Government were familiar with the poor quality of Mitchell's sand. Specifically, they knew that Mitchell had previously dumped contaminated material in the Bernardston landfill. They also knew that Mitchell's sand partially consisted of large rocks, which lowered the quality of the sand.

14. Kingsley believed that it would be in the best interests of the Town of Bernardston to purchase sand from the next-lowest bidder, Cersosimo Industries, Inc. ("Cersosimo"). Bernardston had previously purchased sand from Cersosimo, and Kingsley was pleased with the quality and size of their sand.

15. Cersosimo was the next-lowest bidder in the COG sand bids.

16. At some point in the fall of 2000, Kingsley approached the Board of Selectmen (which at that time consisted of Janice Leh, Richard Steward, and William H. Shores) about the sand contract.

17. After discussion in the fall of 2000, the Board of Selectmen agreed that Bernardston should purchase sand from Cersosimo rather than from Mitchell. Cersosimo's sand cost only a nickel per ton more than Mitchell's sand, resulting in a total price increase of only $125.00 for the entire season. Due to the consensus that Cersosimo's sand was of a much higher quality than Mitchell's sand, and in light of the minimal price difference, the Selectmen and Kingsley concurred that it was in the best interests of the Town of Bernardston to purchase sand from Cersosimo.

18. In March 2001, Mitchell filed a bid protest with the Massachusetts Inspector General's Office.

19. On March 23, 2001, Heidi Zimmerman, Deputy General Counsel with the Inspector General's Office, sent a letter to Judith A. Beckwith, Treasurer of the Town of Bernardston. The letter directed Ms. Beckwith to stop payments on the Cersosimo sand contract until the Inspector General's Office completed its investigation into the bid protest. See Exhibit A.

20. On March 26, 2001, after reading the March 23, 2001 letter from Ms. Zimmerman, then-Selectman William H. Shores ("Shores") had a telephone conversation with Ms. Zimmerman. On the same day, Shores had a telephone conversation with Bernardston's Town Counsel.

21. After speaking with Ms. Zimmerman and Town Counsel, Shores informed Cahill that "we" needed to create documents for the file to show that "we" had gotten alternate quotes for the sand and had acted in good faith regarding the quality of the sand.

22. Specifically, Shores directed Cahill to create two documents: One dated 9/13/00, requesting sealed bids for approximately 2500 tons of winter sand, which would be opened at the Board of Selectmen's Office on 10/11/00; and a second dated 10/12/00, a letter to the Board of Selectmen from the Highway Superintendent stating that he would like to choose the Cersosimo Industries bid over Mitchell's bid due to the quality of the sand.

23. When Cahill approached then-Selectman Janice Leh ("Leh") and informed her that Shores had directed Cahill to create false documents, Leh instructed Cahill to "lose" the documents or hide them in a computer file.

-3-

24. After investigating, the Inspector General's Office determined that Bernardston's decision to pass over Mitchell was not based on a determination that he was not responsive or responsible, and that Bernardston's procurement of sand from Cersosimo was invalid. See Exhibit B.

25. In or around August 2001, the Town of Bernardston settled with Mitchell by paying his attorney's fees.

26. After paying Mitchell's attorney's fees, the Board of Selectmen was satisfied that the matter of the 2000 sand bid was resolved.

27. In May 2003, the defendant John Patch opened files on Cahill's computer and discovered the two documents that Shores had directed her to create.

28. It is not part of Patch's job description or job activities to use Cahill's computer for any reason.

29. Rather than discussing the documents with Cahill, Kingsley, or the Selectmen who were in office at the time of the contract, Patch gave those documents directly to the Inspector General's Office, which reopened its investigation.

30. On December 9, 2003, Gregory Sullivan, Inspector General, sent a letter to Patch, describing the results of its investigation. See Exhibit C.

31. On December 12, 2003, Cahill reported to work to discover that an emergency meeting of the Board of Selectmen had been posted.

32. On that same day, but before the Selectmen met, the locks to Cahill's office were changed. Also on December 12, 2003, Cahill was notified that she was suspended with pay for an unspecified length of time.

33. Also on December 12, 2003, the lock to the Highway Department Garage was changed, and Kingsley was notified that he was suspended with pay for an unspecified length of time.

34. On December 16, 2003, during an open meeting of the Board of Selectmen, the defendants read a list of charges against Cahill and Kingsley. See Exhibits D and E.

35. At that meeting, in the presence of Ms. Cahill's attorney, Edward Berlin, Patch, the Chair of the Board of Selectmen, stated that Cahill had "broken the law" and that the purpose of the upcoming hearing was to determine her punishment.

36. In the days leading up to the December 16, 2003 meeting, and subsequent to that meeting,

the defendant Selectmen made numerous comments, as indicated in the attached affidavits, demonstrating that they have already decided to terminate Cahill and Kingsley.

37. For example, on December 13, 2003, the defendant Snow commented to Jonathan Pineo, member of the Bernardston Board of Health, that the Board of Selectmen "had something on Theresa Cahill and Merle Kingsley," and implied that both Cahill and Kingsley would loose their jobs because of the allegations made by the Inspector General. See Exhibit F.

38. Cahill and Kingsley have been involved in a relationship for approximately ten years, and currently live together.

39. The Selectmen have demonstrated their inability to impartially judge the facts of this matter against both Kingsley and Cahill for a significant time and have long desired to remove Kingsley and Cahill from their positions. See Exhibits F, G, H, and I (Affidavits of Jonathan Pineo, Richard Steward, William H. Shores, and Janice Leh).

40. For example, the defendant Michael Snow has a brother who is an employee of the Town of Bernardston Highway Department. On several occasions, Mr. Snow has expressed his desire to replace Kingsley by giving the Superintendent job to his brother.

41. The defendant Peter Brulotte has demonstrated a longstanding personal grudge against Kingsley. For example, as long ago as 1993, Brulotte swore that he would "get" Kingsley. Over the past decade, Brulotte has made many additional negative comments about Kingsley. See Exhibits G and H.

42. The defendant John Patch has also demonstrated that he cannot be impartial in the upcoming hearing against Cahill and Kingsley. He has publicly and privately made statements indicating that he expects to terminate Cahill and Kingsley from their positions. See Exhibits F, G, H, I, and J.

43. At Cahill and Kingsley's hearing that is currently scheduled for January 28, 2004, the defendant Selectmen currently plan to function as judges, despite the fact that at least one of them (Patch) will be called as a witness, and despite the numerous indicators of their bias against, and conflicts of interest regarding, Cahill and Kingsley.

44. Since December 12, 2003, the charges against Cahill and Kingsley have garnered a large amount of local media attention, frequently involving front-page headlines in the local newspaper, The Recorder. See Exhibits J and K.

45. Section 6(L)(b) of the Town of Bernardston Personnel Policies and Procedures states that "[a]n employee who is not giving [sic] a probationary period may be discharged for cause." See Exhibit L.

46. Although the plaintiffs requested on January 7, 2004 that the defendants recuse themselves from sitting as judges at their hearing and appoint an impartial decision-maker, the defendants voted unanimously against doing so, without ever discussing the merits of the plaintiffs' request.

## CAUSES OF ACTION

### COUNT I: DEPRIVATION OF LIBERTY INTEREST WITHOUT DUE PROCESS OF LAW
### Art. 12 of the Massachusetts Declaration of Rights and 42 U.S.C. § 1983

### CAHILL vs. SNOW, PATCH AND BRULOTTE

47. The plaintiffs reallege and incorporate paragraphs 1 through 46 herein as though set forth verbatim.

48. Cahill has a constitutionally protected liberty interest in her reputation.

49. The defendants have publically made stigmatizing statements against Cahill in connection with an alteration of her employment status, and have failed to honor her request for a fair hearing.

50. The defendants' statements about Cahill have seriously damaged her standing and associations in her community, and have placed her good name and reputation at stake.

51. Cahill's due process rights under Article 12 of the Massachusetts Declaration of Rights and the Fourteenth Amendment of the United States Constitution entitle her to a fair name-clearing hearing where she is given the opportunity to refute the false charges that have been made against her.

52. Cahill has no adequate remedy at law.

53. The balance of the equities favors Cahill rather than the defendants, and she has a high probability of success on the merits of their case.

54. Should the hearing proceed with the defendants serving as judges, the likelihood of irreparable harm to Cahill is great, as the subsequent media attention will further damage her reputation in the community. See Exhibits J and K (newspaper articles concerning Cahill and Kingsley's suspension). Furthermore, the deprivation of Cahill's constitutional right to a fair and impartial hearing constitutes irreparable harm.

55. In comparison, the defendants carry little risk of harm should the Court grant the relief that Cahill seeks, and are unlikely to succeed on the merits of their case.

56. WHEREFORE, Cahill respectfully demands that this Court:

   a) grant a temporary restraining order prohibiting the defendants from sitting as judges at the public hearing and ordering the appointment of an unbiased decision-maker;
   b) grant a preliminary injunction prohibiting the defendants from sitting as judges at the public hearing and ordering the appointment of an unbiased decision-maker;
   c) grant a permanent injunction prohibiting the defendants from sitting as judges at the public hearing and ordering the appointment of an unbiased decision-maker;
   d) grant a short order of notice for the hearing of this case; and
   e) grant such other relief as the Court deems just and proper.

## COUNT II: DEPRIVATION OF PROPERTY INTEREST WITHOUT DUE PROCESS OF LAW
### Art. 12 of the Massachusetts Declaration of Rights and 42 U.S.C. § 1983

### CAHILL vs. SNOW, PATCH AND BRULOTTE

55. The plaintiffs reallege and incorporate paragraphs 1 through 54 herein as though set forth verbatim.

56. Section 6(L)(b) of the Town of Bernardston Personnel Policies and Procedures, stating that employees may be discharged for cause, gives Cahill a constitutionally protected property interest in her job.

57. Cahill's due process rights under Article 12 of the Massachusetts Declaration of Rights and the Fourteenth Amendment of the United States Constitution entitle her to a fair hearing with an impartial decision-maker.

58. Cahill has no adequate remedy at law.

59. The balance of the equities favors Cahill rather than the defendants, and she has a high probability of success on the merits of their case.

60. Should the hearing proceed with the defendants serving as judges, the likelihood of irreparable harm to Cahill is great, as the subsequent media attention will further damage her reputation in the community. See Exhibits J and K. Furthermore, the deprivation of Cahill's constitutional right to a fair and impartial hearing constitutes irreparable harm.

61. In comparison, the defendants carry little risk of harm should the Court grant the relief that Cahill seeks, and are unlikely to succeed on the merits of their case.

62. WHEREFORE, Cahill respectfully demands that this Court:

   a) grant a temporary restraining order prohibiting the defendants from sitting as judges at the public hearing and ordering the appointment of an unbiased decision-maker;
   b) grant a preliminary injunction prohibiting the defendants from sitting as judges at the public hearing and ordering the appointment of an unbiased decision-maker;
   c) grant a permanent injunction prohibiting the defendants from sitting as judges at the public hearing and ordering the appointment of an unbiased decision-maker;
   d) grant a short order of notice for the hearing of this case; and
   e) grant such other relief as the Court deems just and proper.

## COUNT III: DEPRIVATION OF PROPERTY INTEREST WITHOUT DUE PROCESS OF LAW
### Art. 12 of the Massachusetts Declaration of Rights and 42 U.S.C. § 1983

### KINGSLEY vs. SNOW, PATCH AND BRULOTTE

63. The plaintiffs reallege and incorporate paragraphs 1 through 62 herein as though set forth verbatim.

64. Section 6(L)(b) of the Town of Bernardston Personnel Policies and Procedures, stating that employees may be discharged for cause, gives Kingsley a constitutionally protected property interest in his job. See Exhibit L.

65. Furthermore, the fact that Kingsley was appointed to his position for a fixed and definite term gives him a constitutionally protected property interest in his job. See Exhibit M.

66. Kingsley's due process rights under Article 12 of the Massachusetts Declaration of Rights and the Fourteenth Amendment of the United States Constitution entitle him to a fair hearing with an impartial decision-maker.

67. Kingsley has no adequate remedy at law.

68. The balance of the equities favors Kingsley rather than the defendants, and he has a high probability of success on the merits of their case.

69. Should the hearing proceed with the defendants serving as judges, the likelihood of irreparable harm to Kingsley is great, as the subsequent media attention will further damage his reputation in the community. See Exhibits J and K. Furthermore, the

deprivation of Kingsley's constitutional right to a fair and impartial hearing constitutes irreparable harm.

70. In comparison, the defendants carry little risk of harm should the Court grant the relief that Kingsley seeks, and are unlikely to succeed on the merits of their case.

71. WHEREFORE, Kingsley respectfully demands that this Court:

 a) grant a temporary restraining order prohibiting the defendants from sitting as judges at the public hearing and ordering the appointment of an unbiased decision-maker;
 b) grant a preliminary injunction prohibiting the defendants from sitting as judges at the public hearing and ordering the appointment of an unbiased decision-maker;
 c) grant a permanent injunction prohibiting the defendants from sitting as judges at the public hearing and ordering the appointment of an unbiased decision-maker;
 d) grant a short order of notice for the hearing of this case; and
 e) grant such other relief as the Court deems just and proper.

Respectfully submitted,

THERESA CAHILL,
Plaintiff,
By her attorneys,
The Law Firm of Edward F. Berlin
By: _____
Edward F. Berlin, BBO # 039900
Cole Thaler, BBO # 654904
20 Federal Street, Suite 5
Greenfield, MA 01301-3302
Telephone   (413) 774-4800
Facsimile   (413) 772-2558

MERLE KINGSLEY,
Plaintiff,
By his attorney,
_____
Alexander Z. Nappan, BBO # 366900
32 Bray Road
Shelburne Falls, MA 01370
Telephone   (413) 625-1081

Dated: January 13, 2004

Verified Complaint

I hereby swear, under the pains and penalties of perjury, that the facts contained in this complaint are true to the best of my knowledge.

_____
Merle Kingsley
Dated: January 13, 2004

_____
Theresa Cahill
Dated: January 13, 2004

-9-

## CERTIFICATE OF SERVICE

The undersigned hereby certify that a copy of the foregoing Complaint has this day been served on the defendants by first class mail, postage prepaid, to John Patch, Chair of the Bernardston Board of Selectmen and Bernardston Town Clerk, at 11 Harwood Drive, Bernardston, MA 01337. The undersigned further certify that a copy of the foregoing Complaint was delivered via first class mail, postage prepaid, to the defendants' attorney, David Jenkins, Esq., Kopelman and Paige, P.C., 31 St. James Avenue, Boston, MA 02116-4102.

Dated: January 13, 2004          By: _____
                                      Edward F. Berlin, Esq.

Dated: January 13, 2004          By: _____
                                      Alexander Z. Nappan, Esq.

# Exhibit A



# The Commonwealth of Massachusetts
## Office of the Inspector General

**ROBERT A. CERASOLI**
INSPECTOR GENERAL

JOHN W. McCORMACK
STATE OFFICE BUILDING
ROOM 1311
TEL (617) 727-9140
FAX (617) 723-2334

MAILING ADDRESS:
STATE HOUSE STATION
P.O. BOX 270
BOSTON, MA 02133

March 23, 2001

Judith A. Beckwith, Treasurer
Town of Bernardston
P.O. Box 435
Bernardston, MA 01337

Dear Ms. Beckwith:

This Office received a complaint regarding the procurement of sand by the Town of Bernardston. Specifically, the allegation is that the Town is procuring sand from someone other then the lowest responsive and responsible bidder who was awarded the contract by the Franklin Regional Council of Government on behalf of the Town.

M.G.L. c. 30B, §5 requires a jurisdiction to award a contract to the lowest responsive and responsible bidder. In addition, M.G.L. c. 30B, §17(b) states that contracts awarded in violation of this chapter are invalid and unenforceable, and no further payment may be made on the contract. See also *Majestic Radiator Enclosure Co. v. Middlesex*, 397 Mass. 1002 (1986).

As such, this Office requests that you withhold making any further payments for the procurement of sand until this Office completes its investigation of this matter. Thank you for your cooperation. If you have any questions, please feel free to contact me.

Sincerely,

Heidi E. Zimmerman
Deputy General Counsel

cc: William H. Shores, Chairman, Board of Selectman

# Exhibit B

# The Commonwealth of Massachusetts

## Office of the Inspector General

ROBERT A. CERASOLI
INSPECTOR GENERAL

May 22, 2001

JOHN W. MCCORMACK
STATE OFFICE BUILDING
ROOM 1311
TEL: (617) 727-9140
FAX: (617) 723-2334

MAILING ADDRESS:
STATE HOUSE STATION
P.O. BOX 270
BOSTON, MA 02133

Ms. Janice A. Leh
Chair, Board of Selectman
Town of Bernardston
P.O. Box 435
Bernardston, MA 01337

Dear Ms. Leh:

I am writing concerning the Town of Bernardston's (Town) purchase of sand from Cersosimo Industries, Inc. (Cersosimo) during the winter months of 2001. It is this Office's opinion that this contract was procured in violation of M.G.L c. 30B.

With the assistance of the Franklin Council of Regional Governments (Council), the Town competitively procured sand. The Town anticipated that it would need approximately 2,500 tons of sand costing approximately $10,000.[1] M.G.L. c. 30B, §5(g) requires that the procurement officer award the contract to the lowest responsible and responsive bidder. According to the Council, the lowest responsive and responsible bidder for the Town's needs was Robert Mitchell. Mr. Mitchell bid a price of $3.80 per ton. Cersosimo, the second lowest bidder, bid a price of $3.95 per ton. According to the Council, it informed the Town that Mr. Mitchell was the lowest bidder and, in its opinion, was responsive and responsible. In addition, the Council requested that the Town notify it if the Town had any issue with awarding the contract on the Town's behalf to Mr. Mitchell. The Town did not respond and the Council executed a contract with Mr. Mitchell.

Based on documents submitted to this Office by the Town, the Bernardston Highway Department (Department) obtained its own price quotations, apart from the Council's collaborative bid.[2] M.G.L. c. 30B, §4(b) requires that the procurement officer award the contract to the responsible person offering the needed quality of supply or service at the

---

[1] Normally, the procurement of a supply costing $5,000 or more but less than $25,000 would be procured following M.G.L. c. 30B, §4 (quotations). However, because this procurement was done as a part of a collaborative bid valued at over $25,000 it was done following M.G.L. c. 30B, §5 (bids).

[2] A jurisdiction may choose to do its own competitive process rather than take advantage of a collaborative bid provided that, the arrangement between the jurisdiction, and collaborative and the invitation for bid permits separate procurements.

lowest price. According to records submitted by the Department, the following price quotations were obtained on October 17, 2000 and October 19, 2000: Robert Mitchell-$3.80 per ton; Cersosimo Industries-$3.85 per ton; and Warner Brothers-$4.25 per ton. The individual in charge at the Department informed this Office that these price quotations were based on an estimated quantity of 2500 tons of sand.

On March 3, 2001, this Office received a complaint alleging that the sand was improperly procured from Cersosimo. Through conversations with Selectman Shores and the individual in charge at the Department, it was established that the Department, in violation of M.G.L. c. 30B, purchased $5,708.07 worth of sand from Cersosimo. The individual in charge of the Department stated that he purchased the sand from Cersosimo because the Department had done business with this company in the past and was very happy with their product. The Department's decision to pass over Robert Mitchell was not based on a determination that this contractor was not responsive or not responsible. As such, the Town's procurement of sand from Cersosimo is invalid and no further payments may be made on the contract. M.G.L. c. 30B, §17(b).

In an attempt to avoid this sort of problem in the future, please note that this Office provides telephone technical assistance to procurement officials Monday through Friday. Town officials may contact this Office and ask to speak with a M.G.L. c. 30B attorney for answers to procurement questions. The Town may also submit any invitations for bids for a M.G.L. c. 30B compliance review prior to advertising. Additionally, this Office also offers courses in public procurement through the Massachusetts Certified Public Purchasing Official (MCPPO) program. Enclosed please find a catalog. If you or any Town officials have additional questions, please feel free to contact me.

Sincerely,

Heidi E. Zimmerman
Deputy General Counsel

cc:   Judith Beckwith, Treasurer

# Exhibit C



**The Commonwealth of Massachusetts**

Office of the Inspector General

GREGORY W. SULLIVAN
INSPECTOR GENERAL

JOHN W. McCORMACK
STATE OFFICE BUILDING
ONE ASHBURTON PLACE
ROOM 1311
BOSTON, MA 02108
TEL: (617) 727-9140
FAX: (617) 723-2334

Mr. John C. Patch, Chairman
Board of Selectman
Town of Bernardston
11 Harwood Drive
Bernardston, MA 01337

December 9, 2003

Dear Sir:

This letter pertains to the Town of Bernardston's (Town) agreement to purchase sand from Cersosimo Industries, Inc. (Cersosimo) in the fall of 2000. In March 2001, a complaint was made to this Office concerning the Town's award of the sand contract to Cersosimo. The complaint alleged that the sand procurement violated the provisions of M.G.L. c. 30B. Following the complaint, this Office conducted an initial inquiry to obtain the facts concerning the award of the sand contract to Cersosimo. This Office contacted a member of the Town's Board of Selectman and the Town Highway Superintendent. During the initial inquiry, this Office learned that in the fall of 2000, the Town participated in a collaborative bidding process for the purchase of sand with the assistance of the Franklin Council of Regional Governments (FCRG). The FCRG, on behalf of Bernardston and several other municipalities, solicited competitive bids for the purchase of sand. The lowest responsive and responsible bidder was Robert Mitchell (Mitchell) at $3.80 per ton. Cersosimo was the second lowest bidder at $3.95 per ton. The FCRG notified the Town that Mitchell was the lowest responsive and responsible bidder and requested that the Town notify them if the Town had any problem with awarding the contract to Mitchell. The Town did not respond and the contract was awarded to Mitchell.

In 2001, this Office spoke with the Highway Superintendent who claimed that he decided not to participate in the sand contract awarded by the FCRG to Mitchell and instead initiated a separate quote process for the sand procurement. The Highway Superintendent provided to this Office a document entitled "Chapter 30B Telephone Bid Sheet" (Telephone Bid Sheet) which recorded the following quotes that were purportedly obtained by the Superintendent on 10/19/00: Robert Mitchell - $3.80 per ton; Cersosimo Industries, Inc. - $3.85 per ton; and Warner Brothers - $4.25 per ton. When asked why he had rejected the low bidder, Mitchell, he replied that Mitchell was not a responsible bidder, that he (the Highway Superintendent) had gotten bad references on Mitchell from the towns of Brattleboro, VT and Erving, MA. He also said that he liked