2

Cerosimo Industries, Inc, with whom he had done business for several years. It was subsequently determined that Mitchell had not done business with either Brattleboro, VT or Erving, MA prior to October 2000. Moreover, this Office received information that raised serious doubt about whether Warner Brothers had ever tendered a quote at all during the so-called quote process as reflected on the Telephone Bid Sheet.

The Highway Superintendent was subsequently informed that this Office had determined that Mitchell had not done business with Brattleboro or Erving in the past and he responded by stating that there had been a miscommunication. He said that he awarded the contract to Cerosimo because he had done business with them in the past and that he liked them. Following our initial inquiry, this Office sent a letter to the Chairman of the Bernardston Board of Selectmen.[1] This letter, dated May 22, 2001, declared the award of the Fall 2000 sand contract to Cerosimo to be invalid and a violation of M.G.L. c. 30B.

In May 2003, documents were received by this Office which suggested that there may have been an attempted cover-up in this matter. One of these documents, dated 9/13/00, was entitled "Bid Notice/Town of Bernardston/Highway Sand Bid" (Bid Notice). It requested sealed bids for approximately 2,500 tons of winter sand, which would be opened at the Board of Selectmen's Office in Bernardston on 10/11/00. A second document, dated 10/12/00, was an unsigned letter to the Bernardston Board of Selectmen from the Highway Superintendent stating that he would like to choose the Cerosimo Industries, Inc. bid over that of Mitchell because of the quality of the sand, even though the Cerosimo Industries bid was five cents more a ton. Accompanying these documents was a printout of a computer directory which showed that the two documents described above had been last saved on the computer on 3/26/01. The date, 3/26/01, is significant because it follows closely the date, 3/23/01, when this Office addressed a letter to the Town Treasurer directing her to withhold payments for the procurement of sand because it appeared that the Town was procuring sand from someone other than the lowest responsive and responsible bidder. This letter also mentioned that this Office had received a complaint about the sand contract and would be conducting an investigation into the matter. A copy of this letter was also sent to a member of the Board of Selectmen. It appeared as though the documents could have been created in response to this Office's letter dated 3/23/01 rather than on the dates reflected on the documents.

In the fall of 2003 this Office conducted further investigation into the Town's sand procurement conducted in the fall of 2000. Further investigation was deemed warranted because the documents mentioned above, dated 9/13/00 (the Bid Notice) and 10/12/00 (the unsigned letter from the Highway Superintendent) appeared to have been created on 3/26/01. This was long after the sand contract was awarded and immediately following this Office's letter, dated 3/23/01, to the Town Treasurer and a Selectman indicating that an investigation would be conducted. Moreover, the dates on these two documents failed to correspond with the dates set forth on the Telephone Bid Sheet, which involved the

---

[1] The Chairman of the Board of Selectmen at the time of the letter is not the current Chairman and no longer serves as a Town Selectman.

quote process for the purchase of sand. The Telephone Bid Sheet disclosed that three quotes were obtained by the Highway Superintendent for sand on 10/19/00. If the 10/19/00 quote process was legitimate, the document dated 9/13/00 which referred to a sealed bid process on 10/11/00 and the document dated 10/12/00 regarding the Highway Superintendent's intention to choose Cerosimo appeared to be falsified and required explanation. Accordingly, this Office conducted interviews with the Administrative Assistant to the Board of Selectmen (Administrative Assistant), the Highway Superintendent, and a former member of the Town's Board of Selectmen.

The Administrative Assistant was interviewed on 11/21/03 and initially stated that the Town chose not to follow the FCRG collaborative contract for the purchase of sand in the fall of 2000 because the quality of sand provided by Cerosimo was better than the low bidder. She advised that the sand procurement was not put out to bid after the Town chose not to accept the FCRG's low bidder (Mitchell). She recalled that the Selectmen nonetheless used the bids submitted to the FCRG in deciding to award the sand contract to Cerosimo.[2] The Administrative Assistant was shown a copy of the Telephone Bid Sheet which disclosed that three parties including Cerosimo, Mitchell and a third vendor had submitted quotes to supply sand to the Town on 10/19/00. She identified her signature on the document and identified handwriting pertaining to the quotes as belonging to the Highway Superintendent. She admitted for the first time that she gave this document to the Board of Selectmen.[3]

During the interview, she provided to investigators an official file, which upon examination, revealed a document entitled "Agreement." This document was created by Cerosimo Industries, Inc. The document was dated 10/11/00 and in it, Cerosimo agreed to furnish sand to Bernardston at the rate of $3.85 per ton. The Administrative Assistant was at a loss to explain the contradictions between her initial statements to investigators concerning the sand procurement process and the Telephone Bid Sheet disclosing the quote process on 10/19/00. She was also unable to explain the "Agreement" document showing that Cerosimo had an agreement with the Town to purchase sand on 10/11/00, over a week before the so-called quote process was initiated.

The Administrative Assistant was shown the documents furnished to this Office which suggested the possibility of a procurement cover-up. As explained above, these documents included a "Bid Notice" from the Town, dated 9/13/00 in which sealed bids for the procurement of sand were solicited. The document shows that the return date for the sealed bids was to be 10/11/00. The documents also included an unsigned letter from the Highway Superintendent to the Town Selectmen, dated 10/12/00, which indicated that he would like to choose Cerosimo for the sand procurement because his sand is better quality than Mitchell's. In addition, there was a document that contained a printout of a computer directory which disclosed that the above mentioned "Bid Notice" and the unsigned letter had been last saved on 3/26/01. As reflected above, this Office sent a letter dated 3/23/01 to Town officials indicating that an investigation was being

---

[2] The Cerosimo bid to the FCRG was $3.95 per ton and the Mitchell bid to the Council was $3.80 per ton.

[3] It should be noted that prior to being shown this document, she stated that the sand contract was not put out for bids after the Town opted out of the FCRG's bidding process.

3

4

conducted by this Office into the Town's 2000 purchase of sand. After looking at these documents, the Administrative Assistant admitted that she created these documents and that they were on her office computer. She advised that the letter dated 10/12/00 purportedly from the Highway Superintendent to the Board of Selectmen was actually created by her on 3/26/01 at the direction of one of the Selectmen[4] because there was a bid protest and it had to be shown that "we" had gone out and gotten quotes and had acted in good faith regarding the quality of sand. Moreover, she explained that the document dated 9/13/00, the request for sealed bids, was also generated by her on 3/26/01 at the direction of the same Selectman. He wanted her to create the documents because Mitchell protested the bid award. This protest came shortly before the documents were created. She stated that this Selectman had spoken with an employee of this Office and he said that "we" needed to put some stuff in the files and he told her to produce these documents on 3/26/01.[5] Her admissions lead to the inescapable conclusion that she and the Selectmen participated in a potential cover-up in the event that these documents were later needed to justify the procurement of sand from Cerosimo.

The Highway Superintendent was interviewed on 11/21/03 and initially claimed that he went through the "county" bid process ( i.e., the Franklin Council of Governments's collaborative bid process) for the purchase of sand in the year 2000. He claimed that he recommended to the Board of Selectmen that they chose Cerosimo to supply the sand in 2000 even though Cerosimo was not the low bidder in the "county" bid process. He denied ever soliciting bids himself from Cerosimo for the sand procurement in 2000.

The Superintendent was shown a copy of the Telephone Bid Sheet, which reflected that a quote for the purchase of sand was obtained from Cerosimo on 10/19/00. He admitted that the handwriting on the Bid Sheet was his and admitted that he was the one who solicited the quotes reflected on the Telephone Bid Sheet. He claimed that he brought the Telephone Bid Sheet to the Board of Selectmen and they awarded the sand contract to Cerosimo. In the face of his contradictory statements to investigators and the documentary evidence presented, the Highway Superintendent was asked to explain what really happened with the 2000-sand procurement. For the first time, he revealed what really occurred. He advised that he did not want to go through a bidding process to buy sand in the fall of 2000. He explained that when the FCRG sent out the sheet for him to specify the amount of sand he would need, he did not fill it out and return it to the FCRG. Instead, he went ahead and arranged to buy sand through an employee from Cerosimo Industries without a bidding process. He advised that without his knowledge, the FCRG's Chief Procurement Officer put Bernardston on the bid sheet anyway.[6] He advised that he had already agreed to purchase sand from Cerosimo and was shocked

---

[4] This was the same Selectman that was notified by this Office by letter dated 3/23/01 that an investigation was being conducted by this office into the 2000-sand procurement.

[5] It should be noted that during this interview, investigators asked the Administrative Assistant to produce the procurement file for the purchase of sand from Cerosimo for the year 2000. She was unable to locate it and permitted investigators to look in her file cabinets for it as well. This search was not productive.

[6] This action by the Chief Procurement Officer effectively included the Town of Bernardston in the collaborative bidding process for sand, even though the Highway Superintendent did not wish to participate.

when he later saw the FCRG bid sheet. He put together the Telephone Bid Sheet after he received the county (FCRG) bid sheet.[7]

A former Selectman was interviewed and categorically denied that he directed the Administrative Assistant to prepare the false documents dated 9/13/00 and 10/12/00. He said that he was not aware that the FCRG gave the sand contract to Mitchell. He said that the Highway Superintendent told him that Mitchell was a questionable source and that he liked Cerosimo Industries product and service. He stated that the Highway Superintendent would come into the Selectmen's meeting and advise them that the Cerosimo bid was five cents higher than the lowest bid and that there was a problem with Mitchell. He advised that Mitchell's lawyer made a complaint to the Town regarding the sand procurement and the Town made a payment to Mitchell's lawyer. He said he did not know why the Town paid the money.[8]

It is clear that, in the fall of 2000, the Town's Highway Superintendent deliberately violated the bidding process as mandated by Chapter 30B by purchasing sand from Cerosimo Industries, Inc. through a sole source procurement in violation of M.G.L. c. 30B. The Highway Superintendent admitted to engaging in a sham quote process and to creating a Telephone Bid Sheet after he had already reached a sole source agreement with Cerosimo for the purchase of sand. In this Office's opinion, that this was done to cover-up his illegal conduct and to demonstrate that he had followed the proper procedures. Furthermore, the Highway Superintendent in 2001 faxed the Telephone Bid Sheet to this Office in response to an official inquiry and falsely led an employee of this Office to believe that he engaged in a legitimate quote process for the purchase of sand in 2000. In addition, this Office was informed by Mitchell's Attorney that one of the quotes listed by the Highway Superintendent on the Telephone Bid sheet was never in fact made. Moreover, this Office believes that the Highway Superintendent deliberately attempted to mislead an employee of this Office during the initial investigation of the sand procurement in 2001 by falsely claiming that he had checked two references for the low bidder and found the low bidder's work to be unsatisfactory. It is this Office's opinion that the Highway Superintendent initially lied to investigators from this Office when interviewed on 11/21/03.

Likewise, this Office believes that the Town's Administrative Assistant was either initially grossly mistaken or deliberately misleading in her initial explanation to investigators about the Town's purchase of sand in 2000. She also admitted creating two false documents, at the direction, she claims, of a former member of the Board of

---

[7] As explained earlier in this letter, this Office has obtained information which indicated that at least one quote on this Bid sheet was never in fact obtained. Even if the quotes were in fact obtained as reflected on the Bid Sheet, this document was created to cover up the fact that the Highway Superintendent had entered into a prior agreement with Cerosimo to supply sand and is in violation of the public bidding laws.

[8] This Office is in possession of a letter dated 8/3/01 from the Town Counsel to the particular Selectman discussed above which requested that the Town forward a check for $750.00 to the Town Counsel so that the money could be forwarded to Mitchell's Attorney. The letter states, "In lieu of proceeding with a bid protest hearing in this matter, ...Mr. Mitchell, through his attorney, agreed to settle this matter for payment by the Town of his attorney's fees."

Selectman. One document being an invitation for sealed bids and the other a letter from the Highway Superintendent informing the Board of Selectmen that he would like to choose Cerosimo Industries to buy sand. She admitted during interview to creating these documents because there was a bid protest and it had to be shown that "we" had gone out and obtained quotes and had acted in good faith. It is clear that these documents were created after the Town received notice that this Office was conducting an official inquiry into the 2000 sand procurement and was done to cover-up the truth of the matter. Moreover, her inability to find the Cerosimo sand procurement file, in light of all the other information disclosed above, appears to be highly suspicious.

Accordingly, based upon the information set forth above, this Office recommends that both the Town's Administrative Assistant and the Highway Superintendent be terminated from employment by the Town of Bernardston. This Office further recommends that the Board of Selectmen exercise more diligence in the supervision of the Town's procurement process. The facts of this matter disclose not only a flagrant disregard of the public bidding laws by Town officials but also an even more egregious attempt by these officials to cover-up official wrongdoing.

Very Truly Yours,

*[signature: Gregory W. Sullivan]*

Gregory W. Sullivan
Inspector General

cc: Ms. Laurie MacLeod Esq.
Assistant District Attorney

# Exhibit D

Town of Bernardston
Office of Selectmen
P.O. Box 504
Bernardston, Massachusetts 01337

December 16, 2003

Mr. Merle Kingsley

Notice of Hearing

Dear Mr. Kingsley:

Jan 27, 04  M.S.  RB  JCF

Please be advised that the Board of Selectmen will conduct a hearing in executive session on Tuesday, December 30, 2003, at _____ p.m. in Bernardston at the Town Hall to discuss your discipline, and to hear charges brought against you as an employee.

Specifically, it is alleged that you violated the state bidding process, as set forth in Massachusetts General Laws, Chapter 30B, by purchasing sand on behalf of the Town from Cerosimo Industries, Inc, ("Cerosimo") through a sole-source procurement. This was allegedly done through a sham quotation process, by which you created a Telephone Bid Sheet after you already reached a sole-source agreement with Cerosimo for the purchase of sand. It is further alleged that one of the quotes you listed on the Telephone Bid Sheet was never in fact made, and that you falsely claimed to have checked two references for the low bidder and found the low bidder's work to be unsatisfactory. Finally, it is alleged that you impeded an investigation by the Office of the Inspector General by providing false and misleading information to an investigator.

These actions constitute violations of state law, and represent a failure to perform the essential duties of your job in a lawful, ethical and competent manner.

The Board is considering discipline against you, up to and including termination from employment.

You have the right to request that the hearing be held in open session. You also have the right to be present in executive session during any discussions that pertain to you, to have counsel or a representative of your choice present, and to speak on your own behalf.

Sincerely,

Bernardston Board of Selectmen

# Exhibit E

Town of Bernardston
Office of Selectmen
P.O. Box 504
Bernardston, Massachusetts 01337

December 16, 2003

Ms. Theresa Cahill

Notice of Hearing

Dear Ms. Theresa Cahill:

Please be advised that the Board of Selectmen will conduct a hearing in executive session on Tuesday, December 30, 2003, at _____ p.m. in Bernardston at the Town Hall to discuss your discipline, and to hear charges brought against you as an employee.

Specifically, it is alleged that you participated in the violation of the state bidding process, as set forth in Massachusetts General Laws, Chapter 30B, by drafting two false documents pertaining to the procurement of sand by the Town. It is further alleged that you created these documents after a sole-source procurement was made, and after the Town received notice of a bid protest relating to this procurement, so that there would be evidence to justify the purchase of the sand from Cersosimo Industries, Inc. Finally, it is alleged that you misled the Office of the Inspector General by providing contradictory and inaccurate information to an investigator.

These actions constitute violations of state law, and represent a failure to perform the essential duties of your job in a lawful, ethical and competent manner.

The Board is considering discipline against you, up to and including termination from employment.

You have the right to request that the hearing be held in open session. You also have the right to be present in executive session during any discussions that pertain to you, to have counsel or a representative of your choice present, and to speak on your own behalf.

Sincerely,

Bernardston Board of Selectmen

Exhibit F

Affidavit of Jonathan Pineo

1. My name is Jonathan Pineo. I live at 21 Railroad Street, Bernardston, MA 01337.

2. I am a member of the Bernardston Board of Health. I have been on the Board for approximately two years.

3. On Saturday, December 13, 2003, I was walking into the South Street Bakery in Bernardston with two other members of the Board of Health, Bob Eddy and Dave Powers.

4. As we were walking into the bakery, we ran into Mike Snow. Mr. Snow is a member of the Bernardston Board of Selectmen.

5. Mr. Snow stopped and had a conversation with Bob, Dave and me. During that conversation, Mr. Snow commented that the Board of Selectmen "had something on Theresa Cahill and Merle Kingsley."

6. Mr. Snow stated that certain charges against Ms. Cahill and Mr. Kingsley would be discussed at a meeting on the following Tuesday, December 16, 2003. Mr. Snow further stated that he didn't know whether the meeting would take place in executive session or not, but that whatever took place would not have to be kept secret.

7. Based on Mr. Snow's comments, it was my impression that Ms. Cahill would no longer be working as the Administrative Assistant for the Town of Bernardston, and that Mr. Kingsley would no longer be working as Highway Superintendent for the Town of Bernardston.

8. For these reasons, I do not believe that Mr. Snow can serve as an unbiased and impartial decision-maker at Ms. Cahill's hearing that is currently scheduled for January 7, 2004.

9. At recent Board of Health meetings, Jack Patch, another member of the Bernardston Board of Selectmen, has stated that the Board of Selectmen is seeking a replacement for Ms. Cahill.

10. Mr. Patch has implied that the Town is seeking a permanent replacement for Ms. Cahill, not a temporary replacement.

11. Based on Mr. Patch's comments, it is my belief that he has already decided to terminate Ms. Cahill from her position as Administrative Assistant for the Town of Bernardston.

Jonathan Pineo Affidavit
Page 2 of 2

12. For this reason, I do not believe that Mr. Patch can serve as an unbiased and impartial decision-maker at Ms. Cahill's hearing that is currently scheduled for January 7, 2004.

Signed under the pains and penalties of perjury, this 3rd day of January, 2004.

_____
Jonathan Pineo

Exhibit G

Affidavit of Mr. Richard Steward

1. My name is Richard Steward. I live at 24 School Street, Bernardston, MA 01337.

2. I was a staff member with the Northwestern District Attorney's Office for 11 years, and presently have been an Investigator with the Massachusetts Attorney General's Office for 11 years.

3. I am a former member of the Bernardston Board of Selectmen. I served on the Board from May 1995 until May 2001. I was Chair of the Board for approximately 2 years.

4. While I was on the Board of Selectmen, Ms. Theresa Cahill was the Administrative Assistant for the Town of Bernardston.

5. I am familiar with the current allegations of wrongdoing against Ms. Cahill and the Highway Superintendent, Merle Kingsley. Specifically, I am aware that both Ms. Cahill and Mr. Kingsley are accused of fabricating documents in connection with the procurement of sand from Cersosimo Industries in the fall of 2000.

6. I am aware that Ms. Cahill and Mr. Kingsley live together, and have been in a relationship with each other for approximately ten years.

7. I know each of the three current Bernardston Selectmen: Jack Patch, Mike Snow, and Peter Brulotte.

8. I am aware that there is a hearing of the charges against Ms. Cahill scheduled for January 28, 2004, and that Jack Patch, Mike Snow, and Peter Brulotte will serve as the decision-makers at that hearing.

9. I am aware of an effort in 1995 involving a business owned and operated by Mr. Snow to manufacture a cause for dismissal of Merle Kingsley. As Hearing Officer in Mr. Kingsley's disciplinary hearing at that time, I determined that the charges against Mr. Kingsley were specious. I believe that Mr. Snow was connected to the fabrication of the charges against Mr. Kingsley.

10. At a Selectmen's meeting that I attended in 2003, I heard Mr. Snow admit to following Mr. Kingsley around and examining individual potholes in the roads. I believe the purpose of this was to ridicule and embarrass Mr. Kingsley in an open meeting, rather than discuss it with him in a private conversation.

11. I have a signed copy of a statement from Ms. Cahill in which she relates a conversation between Mr. Snow and the Bernardston Town Treasurer, Judy Beckwith, during which Mr. Snow discussed installing his brother, Kevin Snow, as Superintendent of the Highway Department, the position currently held by Mr. Kingsley. Mr. Snow is aware

Affidavit of Richard Steward
Page 2 of 3

that this written statement exists and has been circulated.

12. For these reasons, and because the charges against Mr. Kingsley and Ms. Cahill are based on the same set of facts, I believe that Mr. Snow is biased regarding the charges against Mr. Kingsley and Ms. Cahill and cannot be an impartial or unbiased decision-maker at their hearing.

13. Before becoming a Selectman, Mr. Brulotte was the Chief of the Bernardston Police Department. In 1995, I heard Mr. Brulotte state that, as a result of the disciplinary hearing against Mr. Kingsley, "we'll finally be able to get rid of the little prick." As long ago as 1993, Mr. Brulotte swore he would "get" Mr. Kingsley.

14. During most of my tenure on the Board of Selectmen, Mr. Brulotte was the Chief of the Bernardston Police Department, and shared a building with the Highway Department. During that time, there was constant friction between Mr. Brulotte and Mr. Kingsley over the operation and maintenance of the building. Mr. Brulotte constantly complained about Mr. Kingsley and made derogatory comments about him, both professionally and personally.

15. It is my belief that Mr. Brulotte is prejudiced against any operation of the Highway Department by Mr. Kingsley. For this reason, and because the charges against Mr. Kingsley and Ms. Cahill are based on the same set of facts, I believe that Mr. Brulotte is biased regarding the charges against Ms. Cahill and cannot be an impartial or unbiased decision-maker at their hearing.

16. In May 2003, I was present at the Bernardston Town Meeting where Mr. Patch sought to decrease Ms. Cahill's hours from full-time to part-time. Prior to that time, I had witnessed Mr. Patch berate and demean Ms. Cahill at Selectmen's meetings.

17. Ms. Cahill has sought my advice about various incidents during which Mr. Patch frightened her by yelling loudly, standing close to her and shaking his hand in her face, and otherwise harassing her. Ms. Cahill informed me of one incident in which Mr. Patch vacuumed around her for approximately two hours.

18. I also believe that, during the Summer of 2003, the current Board of Selectmen invented another excuse to berate Mr. Kingsley by claiming that he made an entry on a time sheet that, in fact, he never made. The three current Selectmen conducted themselves in such a manner that brought an admonition from the District Attorney's Office for violating the Open Meetings Law.

19. For these reasons, I believe that Mr. Patch is biased regarding the charges against Ms. Cahill and Mr. Kingsley and cannot be an impartial or unbiased decision-maker at their

hearing.

Signed under the pains and penalties of perjury this 9th day of January, 2004,

Richard Steward

# Exhibit H

Affidavit of Mr. William H. Shores

1. My name is William H. Shores. I live at 727 Brattleboro Road, Bernardston, MA 01337.

2. I am a former member of the Bernardston Board of Selectmen. I served on the Board from May 1973 until May 1982; from May 1988 until May 1994; and from May 1997 until May 2003. I was most recently Chair of the Board from May 2001 until May 2002.

3. While I was on the Board of Selectmen, Ms. Theresa Cahill was the Administrative Assistant for the Town of Bernardston.

4. I am familiar with the current allegations of wrongdoing against Ms. Cahill and the Highway Superintendent, Merle Kingsley. Specifically, I am aware that both Ms. Cahill and Mr. Kingsley are accused of fabricating documents in connection with the procurement of sand from Cersosimo Industries in the fall of 2000.

5. I am aware that Ms. Cahill and Mr. Kingsley live together, and have been in a relationship with each other for approximately ten years.

6. I know each of the three current Bernardston Selectmen: Jack Patch, Mike Snow, and Peter Brulotte.

7. I am aware that there is a hearing of the charges against Ms. Cahill scheduled for January 7, 2004, and that Jack Patch, Mike Snow, and Peter Brulotte will serve as the decision-makers at that hearing.

8. I am aware that Selectman Mike Snow's brother, Kevin Snow, works for the Highway Department, and will be eligible for the Superintendent position if Merle Kingsley loses his job. I am aware that Mike Snow has previously made comments indicating that he would like his brother Kevin to have the position of Superintendent.

9. For this reason, and because the charges against Mr. Kingsley and Ms. Cahill are based on the same set of facts, I believe that Mike Snow has a conflict of interest regarding the charges against Ms. Cahill and cannot be an impartial or unbiased decision-maker at her hearing.

10. Furthermore, I believe that Selectman Peter Brulotte has a longstanding personal grudge against Mr. Kingsley. For example, as long ago as 1993, Mr. Brulotte swore he would "get" Mr. Kingsley. Mr. Brulotte has made many additional negative comments about Mr. Kingsley.

11. For that reason, I believe that Mr. Brulotte has a conflict of interest regarding the charges against Ms. Cahill and cannot be an impartial or unbiased decision-maker at her hearing.

Affidavit of William H. Shores
Page 2 of 2

12. I am also aware that Selectman Jack Patch may be called to testify as a witness at Ms. Cahill's hearing, and that he has publicly and privately made statements indicating that he expects to terminate Ms. Cahill from her position. I am also aware that Mr. Patch has long desired and attempted to remove Ms. Cahill from her Administrative Assistant position.

13. For these reasons, I believe that Mr. Patch has a conflict of interest regarding the charges against Ms. Cahill and cannot be an impartial or unbiased decision-maker at Ms. Cahill's hearing.

Signed under the pains and penalties of perjury this 2nd day of January, 2004,

_____
William H. Shores

Exhibit I