UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

C.A. No. 04-30024-MAP

THERESA CAHILL and
MERLE KINGSLEY,

    Plaintiffs

v.

MICHAEL SNOW, JOHN PATCH, and
PETER BRULOTTE,[1]

    Defendants

DEFENDANTS' MEMORANDUM IN
OPPOSITION TO PLAINTIFFS
MOTION FOR TEMPORARY
RESTRAINING ORDER

I.     INTRODUCTION

Now come the defendants, Michael Snow, John Patch, and Peter Brulotte (collectively the "Board of Selectmen"), and hereby oppose the Motion for Temporary Restraining Order filed by the plaintiffs, Theresa Cahill ("Cahill") and Merle Kingsley ("Kingsley").

This action arises from the Board of Selectmen's notice of a disciplinary hearing, originally scheduled for January 7, 2004, to determine whether Cahill and Kingsley—two at-will employees of the Town—participated in fraudulent acts, specifically misrepresenting facts and fabricating documents, during the Commonwealth of Massachusetts Office of the Inspector General's ("Inspector General") investigation into the Town of Bernardston's ("Town") procuring of a sand contract from Cersosimo Industries, Inc., ("Cersosimo") in the fall of 2000. The Inspector General investigated

---

[1] Michael Snow, John Patch, and Peter Brulotte are not being sued in their individual capacity, but rather in their capacities as members of the Town of Bernardston Board of Selectmen.

this matter on two occasions. The first investigation occurred in 2001, after a complaint was made by Robert Mitchell ("Mitchell"), who was the lowest bidder for the sand contract. The case was re-opened in May 2003, after defendant John Patch ("Patch") discovered documents on the Board of Selectmen's computer, which suggested that there was an attempted cover-up during the initial investigation. On December 9, 2003, the Inspector General concluded that both Cahill and Kingsley participated in fraudulent conduct through misrepresentation and fabrication of documents. Based upon this report and the Town of Bernardston's Personnel Policies and Procedures ("Personnel Policies"), the Board of Selectmen placed Cahill and Kingsley on administrative leave with pay and scheduled a disciplinary hearing for January 7, 2004.[2]

Cahill and Kingsley now seek to enjoin the Board of Selectmen from holding the disciplinary hearing until an outside hearing officer can be appointed. The Board of Selectmen oppose the motion for temporary restraining order on the grounds that Cahill and Kingsley have requested relief that the Court cannot order, and further, that they have not made the showing required to obtain injunctive relief.

II.   FACTS

A. Cahill and Kingsley's Employment with the Town of Bernardston

Kingsley is employed as the Town's Highway Superintendent. See Affidavit of John Patch (hereinafter "Patch Aff.") ¶ 9. Kingsley has claimed that the prior Board of Selectmen, consisting of Richard Steward ("Steward"), William Shores ("Shores"), and Janice Leh ("Leh"), reappointed Kingsley in 2001, for a three year term, however the minutes of Board of Selectmen meetings from that period do not indicate that the Board

---

[2] The hearing was postponed at the request of Cahill and Kingsley. Any further hearings were postponed, pending settlement discussions, which proved unsuccessful.

of Selectmen ever voted on such an appointment. Patch Aff., ¶12. Rather, the only document relating to such an appointment is a form purportedly signed by two of the prior Selectmen on March 7, 2001, but not recorded with the Town Clerk until May 9, 2001—after the composition of the Board had changed. Moreover, Kingsley had previously been required to seek annual reappointments, and a three year appointment by the prior Board of Selectmen would comprise an unprecedented change in this procedure that, suspiciously, would have taken place contemporaneously with the Inspector General's investigation of Kingsley's public bidding violations. Patch Aff., ¶¶ 12, 13 and Ex.5. In any event, even if such a three year appointment had been made in March 2001, Kingsley would be required to seek reappointment in March 2004. One of Kingsley's responsibilities as Highway Superintendent is to financially manage the Highway Department. This includes preparing budgets and keeping detailed financial records such as appropriation accounts. See Patch Aff., ¶ 10 and Ex. 3. Kingsley works under the direction of the Board of Selectmen. See Patch Aff., ¶ 17, 18 and Ex. 3.

Cahill is employed as the Administrative Assistant to the Board of Selectmen. She serves at the will of the Board of Selectmen. See Patch Aff., ¶ 6 and Ex.1.

B.  Inspector General's Investigation

In March 2001, Mitchell made a complaint to the Inspector General alleging that the Town's Highway Department failed to award him, as the lowest bidder, the sand contract, and instead awarded it to Cersosimo. See Verified Complaint, Ex. C, p.1. The Inspector General began an initial investigation. During this investigation, the Inspector General learned that the Town participated in a collaborative bidding process for the purchase of sand with Franklin Council of Regional Governments ("FCRG"). See id.

The FCRG solicited bids on behalf of the Town and selected Mitchell and Cersosimo to be the lowest bidders. See id. The FCRG notified the Town of the bids and stated that it would be awarded to Mitchell unless they were notified that the Town objected to Mitchell. See id. The FCRG was never notified of any such objection, and the contract was awarded to Mitchell. See id.

The Inspector General interviewed Kingsley, who claimed that he decided against participating in the FCRG program and therefore initiated a separate quote process. As a result of this process, Mitchell was the lowest bidder, but Kingsley claimed that he nevertheless chose Cersosimo, because he had received bad references on Mitchell from the towns of Brattelboro, Vermont, and Erving, Massachusetts. See id. Kingsley also admitted that he had done business with Cersosimo for several years. See id., 2. The Inspector General later confirmed that Mitchell had never done prior business with Brattleboro, Vermont or Erving, Masschusetts. See id. The Inspector General concluded that the contract to Cersosimo was invalid and that Kingsley had violated G.L. c.30B. See id.; see also Verified Complaint, Ex. B. The Town later settled this claim with Mitchell. See Patch Aff., ¶25 and Ex.7.

In May 2003, Patch was backing up files on the Board of Selectmen's computer, when he discovered a file titled "Sand." See Patch Aff., ¶26 and Ex.8. In this file were two suspicious documents, a "Bid Notice" dated September 13, 2000, and a letter dated October 12, 2000, from Kingsley to the Board of Selectmen. See Patch Aff., ¶¶ 27-28 and Exs. 9-10. Patch deemed these documents as suspicious because, notwithstanding the dates stated in the text of the documents, they apparently had been created on March 26, 2001—three days after the Inspector General notified the Town Treasurer to withhold

4

payments for the procurement of sand because there appeared to be a G.L. c.30 violation. See Patch Aff., ¶ 29 and Ex.11. Patch notified the Inspector General of his findings and with this information the Inspector General commenced the second investigation.[3] See Patch Aff., ¶¶ 30-31.

According to the Inspector General's report of the second investigation, Kingsley admitted that he did not want to go through the bidding process and did not complete the form sent by FCRG. Instead, he arranged to buy sand from Cersosimo. See Verified Complaint, Ex. C, p.4. The Inspector General concluded that Kingsley, "deliberately violated the bidding process as mandated by Chapter 30B." Id., p.5. The Inspector General also concluded that Kingsley lied to the investigator of the first investigation by informing him that he had checked Mitchell's references and received poor reports, and misled the Inspector General by attempting to prove that he engaged in a legitimate quote process for the procurement of sand. See id.

The Inspector General also interviewed Cahill. During the second interview, Cahill admitted to creating two false documents, at the direction of a former Board of Selectmen,[4] so it could be shown during the first investigation that the Town had "gone out and obtained quotes and had acted in good faith." See id. at 6. The Inspector General concluded that Cahill misled and fabricated documents during the first investigation. See id. Based on this information, the investigator concluded that Kingsley and Cahill should be terminated for misleading the investigator and attempting to cover-up the violation of the bidding process. See id.

---

[3] It is important to note that the Inspector General is an independent state agency that conducted its own investigation. See G.L. c.12A, § 14.

[4] The current members of the Board of Selectmen were not on the Board at the time of the investigation. See Patch's Aff. ¶¶ 22-23. Indeed, it is the members of the former Board of Selectmen, whom Cahill claims instructed her to obstruct the Inspector General's investigation, who have now filed affidavits on behalf of the plaintiffs in this case.

5

C.    Notice of Hearing

On or about December 9, 2003, the Board of Selectmen received a letter from the Inspector General concluding that both Cahill and Kingsley had participated in fraudulent acts. Verified Complaint, Ex. C. The Inspector General recommended that both plaintiffs be terminated. Id., p.6. After receiving this letter, the Board of Selectmen placed Cahill and Kingsley on administrative leave with pay. See Patch Aff., ¶34. The Board of Selectmen then decided, pursuant to the Town's Personnel Polices to proceed with disciplinary action. See Patch Aff., ¶ 33 and Ex. 6.

The Board of Selectmen is the chief executive board for the Town and has sole authority regarding implementation of the Town's Personnel Policies. Patch Aff., Ex. 6, §4. The Personnel Policies do not require any pre-disciplinary hearing because Town employees are "at-will." Indeed, the Personnel Policies state that "the Town reserves the right to terminate employment for any reason permissible by law." Id., §6(L).

Notwithstanding that there is no provision entitling the plaintiffs to a pre-disciplinary hearing, the Board of Selectmen decided to conduct one. On December 16, 2003, the Board of Selectmen sent a "Notice of Hearing" to Cahill and Kingsley. Patch Aff., ¶¶ 35-36 and Exs. 12-13. Pursuant to the state Open Meeting Law, G.L. c.39, §23B, the Board of Selectmen informed the plaintiffs that the hearing would be held in executive session, but the plaintiffs had a right to request that the hearing instead be held in a public forum during an open session. See Patch Aff., ¶¶ 35-36 and Exs.12-13. Cahill and Kingsley requested that the hearing be held in open session. See Patch Aff., ¶¶ 37-38.

III.    ARGUMENT

A. Temporary Restraining Order Standard

To obtain a temporary restraining order or a preliminary injunction the plaintiffs must show that: "(1) they have a likelihood of success on the merits; (2) they have a likelihood of irreparable harm if the injunction is not granted; (3) the balancing of this harm to the plaintiff with the harm that a grant of injunctive relief would inflict on the defendant; and (4) whether the granting of injunctive relief will serve the public interest." Long Term Care Pharmacy Alliance v. Ferguson, 260 F.Supp.2d 282, 288-89 (2003); see also Packaging Indus. Group, Inc. v. Cheney, 380 Mass. 609, 617, 405 N.E.2d 106, 112 (1980). The plaintiffs have failed to meet this standard.

B.  The Plaintiffs Have Requested Relief That The Court Cannot Order.

As a preliminary matter, Cahill and Kingsley have requested relief that the Court cannot order pursuant to statutory procedures and the Personnel Policies for discharging employees. As at-will employees, the plaintiffs are not entitled to any pre-disciplinary hearing. Therefore, the plaintiffs certainly do not have standing to demand that the Board appoint an outside hearing officer, where the Board, by granting a pre-disciplinary hearing at all, is affording the plaintiffs far greater procedures than they are entitled to receive.[5]

Pursuant to Section 4 of the Town's Personnel Policies, the Board of Selectmen "shall be the final authority in all personnel matters." See Patch Aff., Ex.6, §4. Arguably, the Board of Selectmen might, in its sole discretion, have the authority to appoint an outside hearing officer, but it clearly has no obligation to do so. In this instance, the Board of Selectmen voted unanimously to have the hearing conducted

---

[5] It should be noted that, even if the plaintiffs were tenured Civil Service employees, who are entitled to pre-disciplinary hearings, they would not be entitled to appointment of an outside hearing officer unless the Board of Selectmen agreed. See G.L. c.31, § 41 (providing that civil service employee must be afforded pre-termination notice and hearing prior to termination or suspension of more than five days); G.L. c.31, § 41A (disinterested hearing officer will only be appointed "[u]pon the request of the appointing authority and a tenured employee.").

7

before it. See Patch Aff., ¶ 39. The Town respectfully submits that this decision was clearly within the Board of Selectmen's discretion, and that this Court does not have the authority to second-guess that discretionary decision. "The federal courts are not super personnel boards ordained to reevaluate [employment decisions] made in the course of state and local government operations." Dipiro v. Taft, 584 F.2d 1, 3 (1st Cir.1978), cert. denied, 440 U.S. 914, 99 S.Ct. 1229 (1979). In any event, appointment of an outside hearing officer would not alter the fact that, regardless of who presides over the disciplinary hearing itself, it is the Board of Selectmen that must make any ultimate disciplinary decision.

Since the relief the plaintiffs request is inappropriate and could not, as a matter of law, alter the fact that the Board of Selectmen must make the final decision as to what, if any, discipline is appropriate, the plaintiffs' request for injunctive relief should be denied.

C.   The Plaintiffs Have Failed To Satisfy The Standard For Injunctive Relief

The plaintiffs' motion for temporary restraining order should also be denied because the plaintiffs fail to show that: (1) they have a likelihood of success on the merits; (2) they will suffer cognizable, irreparable harm without the injunction; (3) the balancing of equities weighs in their favor; and (4) the injunction is not adverse to the public interest.

1. The Plaintiffs Do Not Have a Likelihood of Success on the Merits

Cahill and Kingsley claim that appointment of an outside hearing officer is necessary to protect their due process rights. As set forth below, the plaintiffs have failed to demonstrate that they are likely to succeed on the merits of this claim. Therefore, their request for injunctive relief should be denied.

a.  <u>Plaintiffs have no protected property interest in their employment</u>

As a threshold matter, plaintiffs' request for injunctive relief should be denied, because they do not have a protected property interest in their continued employment with the Town, so as to provide them with any due process rights whatsoever. An essential element of any due process claim (procedural or substantive), under 42 U.S.C. §1983, is the existence of a right protected under federal law or the United States Constitution. See Parratt v. Taylor, 451 U.S. 527, 536-537 (1981); Martinez v. Colon 54 F.3d 980, 984 (1st Cir.), cert. denied, 116 S. Ct. 515 (1995); Watterson v. Page, 987 F.2d 1, 7 (1st Cir. 1993).

In order to establish a protected property right a plaintiffs must demonstrate that they had a "legitimate claim of entitlement" to their continued employment, grounded in state law. Logan v. Zimmerman Brush Co., 455 U.S. 422, 430 (1982); Chongris v. Board of Appeals of Andover, 811 F.2d 36, 43 (1st Cir. 1987) (property rights, while protected by the federal constitution, "are creatures of state law"); see also Sanderson v. Village of Greenhills, 726 F.2d 284, 286 (6th Cir. 1984). As a general proposition, the greater the discretion a governmental authority has in the conferral of a benefit or discipline, the less likely it becomes that a plaintiff will be found to possess a protected property interest. See, e.g., Madera v. Secretary of the Exec. Office, 418 Mass. 452, 459, 636 N.E.2d 1326, 1330 (1994) (citing Roslindale Motor Sales, Inc. v. Police Comm'r of Boston, 405 Mass. 79, 82-83, 538 N.E.2d 312, 314-15 (1989)).

Only where "the repeated use of explicit mandatory language in connection with requiring specific substantive predicates demands a conclusion that the State has created a protected" property interest, can a due process right be inferred. See Davila-Lopes v.

Zapata, 111 F.3d 192, 196 (1st Cir. 1997) (quoting Hewitt v. Helms, 459 U.S. 460, 471, 103 S.Ct. 864, 871 (1983)). The Davila-Lopes Court indicated that the proper inquiry is, "whether the standards governing the [claimed interest] are so particularized, objective, and defined, and also narrow the [government's] discretion so significantly that [a person in plaintiff's] position could be reasonably confident that he would be" entitled to the privilege asserted.

In this instance, it is undisputable that Cahill is an at-will employee, who may be discharged at any time for any legal reason. Throughout her employment with the Town, Cahill has been an at-will employee. As such, Cahill does not possess any protected property interest in her employment. See Newark v. Boston Housing Authority, 183 F. Supp. 2d 285, 288 (D. Mass. 2001). A property interest in employment can only be created by statutes or contract, and where such an "'independent source' does not supply a property interest, the federal constitution does not offer procedural protections." Kelley v. Action for Boston Community Development, Inc., 419 F. Supp. 511, 518 (1976). Here, there is no statute or contract upon which Cahill may rely to claim a property interest. Thus, Cahill has no more than a "unilateral expectation" of continued employment and, therefore, has no due process rights at all.

Kingsley is similarly without a protected property interest in his employment. Although Kingsley appears to have been required to seek reappointment at periodic intervals,[6] is not a tenured Civil Service employee, he does not have a contract, and the

---

[6] As discussed above, the Board of Selectmen has never voted to reappoint Kingsley during Patch's tenure on the Board, which began in May 2001, and there is no record in Town Hall that evidences any such vote. Patch Aff., ¶¶12, 15. Moreover, Kingsley himself only claims to have an appointment through March 2004, and the Board of Selectmen would have every right to simply decline to reappoint Kingsley to his position.

10

Personnel Policies specifically provide, in Section 6(L), that "[e]mployment with the Town has no specified term or length." Patch Aff., Ex. 6.

Kingsley has claimed that he was reappointed for a "three-year term" by the prior Board of Selectmen, just before Patch came on the Board. Patch Aff., ¶ 11. This is directly inconsistent with Kingsley's claim, in ¶8 of the Verified Complaint, that he is reappointed annually. In any event, any purported appointment of Kingsley to a three year term in March of 2001 would be void and unenforceable, where it was made: (1) just before the Board of Selectmen changed in composition; (2) for a period of three years, where all previous appointments had been for only one year; (3) in the midst of an investigation by the Inspector General into Kingsley's violation of the public bidding laws; (4) by former selectmen, who Cahill claims directed her to obstruct the Inspector General's investigation; and (5) in direct contravention of the Personnel Policies, which provide that employment with the Town is at-will and not for a set term. See White v. Board of Selectmen of Holbrook, 27 Mass. App. Ct. 1117, 537 N.E.2d 173 (1989) (three-year contract with police chief entered into by outgoing Board of Selectmen was void as against public policy, and new Board of Selectmen was not bound thereby). Clearly, under these suspicious circumstances, where there is not even a contract[7]—as there was in White—and the Personnel Policies explicitly provide that Town employees are not to be employed for any set term of office, Kingsley cannot claim that he had a protected property interest in his employment by virtue of the prior Board of Selectmen's alleged "reappointment" of him, whether for one years or three years.

---

[7] Even if Kingsley had a contract, which he does not, such a contract would be void and unenforceable, since a contract by a town made in violation of the town's bylaws or charter is invalid and cannot be enforced against the town. E.g., Clover Hill Hospital, Inc. v. Lawrence, 315 Mass. 284, 286, 52 N.E.2d 400 (1943); Duff v. Southbridge, 324 Mass. 224, 230, 85 N.E.2d 444 (1950).

Plaintiffs rely upon the provision in Section 6(L)(b) of the Personnel Policies provide that employees may be terminated "for cause." However this provision of the Personnel Policies must be read in conjunction with the provision in Section 6(L), which clarifies that "the Town reserves the right to terminate employment for any reason permissible by law." See Bennett v. City of Boston, 869 F.2d 19, 21(1st Cir. 1989) ("use of the words 'for cause' does not magically, or always, transform a job into protected property."). Where, as here, another provision of the Personnel Policies clarifies and limits a "for cause" provision, no protected property interest is created. Id. This "any reason" termination provision clearly affords the Board of Selectmen, as appointing authority, such broad discretion as to defeat any subjective notion on the plaintiffs' part that they have a protected interest in their continued employment. See Davila-Lopes v. Zapata, 111 F.3d 192, 196 (1st Cir. 1997) (proper inquiry is "whether the standards governing the [claimed interest] are so particularized, objective, and defined, and also narrow the [government's] discretion so significantly that [a person in plaintiff's] position could be reasonably confident that he would be" entitled to the privilege asserted); see also Hewitt v. Helms, 459 U.S. 460, 471, 103 S.Ct. 864, 871 (1983).

Similarly, the mere fact that the Personnel Policies provide for a post-disciplinary grievance process does not establish that the plaintiffs possess a protected property interest in their employment. See Smith v. Comm'r of Mental Retardation, 409 Mass. 545, 549, 567 N.E.2d 924, 927 (1991) ("statute that 'merely condition[s] an employee's removal on compliance with certain specified procedures,' does not establish a constitutionally protected property interest in the position."); Fontana v. Comm'r of Metropolitan Dist. Comm'n, 34 Mass. App. Ct. 63, 64-65, 606 N.E.2d 1343, 1344-45

(1993) (rejecting argument that "MDC rules that dictate the manner in which discipline is to be administered to MDC officers create a constitutionally protected property interest for probationary employees").

Since the plaintiffs are not tenured, do not have contracts, and may be terminated without a pre-disciplinary hearing "for any reason permissible by law," they clearly do not have any protected property interest in their continued employment. For this reason alone, the plaintiffs' request for injunctive relief should be denied.

    b.    <u>The Plaintiffs are not likely to succeed on a procedural due process claim</u>

To the extent the plaintiffs' claims are intended to assert violations of their procedural due process rights,[8] such claims must fail because they are receiving all of the process to which they are entitled.

First, to the extent that the plaintiffs object to their suspension with pay, it should be noted that a public employee's suspension with pay does not trigger due process rights, even where the employee has a protected property interest in his/her employment. <u>E.g.</u>, <u>Cronin</u> v. <u>Town of Amesbury</u>, 895 F.Supp. 375, 387 (1995).

More fundamentally, although it is not required to do so, the Town is providing the plaintiffs with notice and a full opportunity to be heard prior to any disciplinary decision. Indeed, the plaintiffs are to be represented by their attorneys at this hearing. <u>See</u> <u>Patch Aff.</u>, ¶¶35-36 and Exs. 12-13. As has been discussed, this is far **greater** process than that to which the plaintiffs are entitled. Even a tenured public employee with a right to expect continued employment (the plaintiffs are not such employees) is

---

[8] The plaintiffs' Complaint is vague, in that it does not specify the actual theory(ies) underlying their claims. Although the Complaint invokes 42 U.S.C. § 1983 and asserts deprivations of "liberty" and "property" interests, it does not specify whether these apparent due process claims are intended as so-called procedural due process or substantive due process claims. Accordingly, the defendants will address both types of due process claims in this Opposition.

13

afforded due process where the employee is given "oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." Loudermill v. Cleveland Board of Education, 470 U.S. 532, 546 (1985) (presenting constitutional requirements for termination of tenured public employees). In fact, the process being undertaken by the Board of Selectmen is far more generous than the process provided for in the Town's Personnel Policies, which do not provide for any pre-disciplinary hearing. Rather, pursuant to Section 6(L)(b) of the Personnel Policies, employees are entitled only to initiate a grievance process **after** they are disciplined or terminated.

Even if they were tenured Civil Service employees, the plaintiffs' assertion that they are entitled to an outside hearing officer would be without merit. Even the Civil Service statute, G.L. c.31, § 41A, "does not require proceedings before a disinterested hearing officer in place of the appointing authority, rather it **authorizes** such a hearing if **both** sides so elect. There is no legal authority for the plaintiffs to rely upon which provides them with a non-statutory right to a hearing, in the first instance, before a disinterested hearing officer." McIsaac v. Civil Service Commission, 38 Mass. App. Ct. 473, 476, 648 N.E.2d 1312, 1314 (1995); see also Wilson v. Brookline Housing Authority, 383 Mass. 878, 879, 420 N.E.2d 314 (1981); Cronin v. Town of Amesbury, 895 F.Supp. 375, 387 (D. Mass. 1995), aff'd 81 F.3d 257 (1st Cir. 1996). The United States Supreme Court has further held that, in employment matters, the employer "is the official best informed about the 'cause' for termination. If disqualification is required on the ground that the responsible supervisor could not be wholly impartial, the removal

procedure would become increasingly complex." Id. (quoting Arnett v. Kennedy, 416 U.S. 134, 170 n.5 (1974) (Powell, J. concurring)).

In addition to being legally erroneous, plaintiffs' assertion that they have a right to an impartial hearing officer because the Board of Selectmen has a personal bias against them is factually unsupported. The courts have held that a biased decision maker only raises concerns when the bias is so "egregious as to pose constitutional difficulty, such as where an adjudicator has a pecuniary interest in the outcome or has been the target of abuse or criticism by the party before him." Withrow v. Larkin, 421 U.S. 35, 46-47 (1975); compare Police Comm'r of Boston v. Municipal Court of the W. Roxbury Dist. 368 Mass. 501, 507, 332 N.E.2d 901, 905 (1975) (holding that a hearing officer was not disinterested where counsel represented his wife in a divorce proceeding).

Contrary to the plaintiffs' allegations, any claimed biases on the part of the Board of Selectmen do not rise to this egregious level. These hearings have been scheduled solely because of the Inspector General's independent report that Kingsley and Cahill engaged in fraudulent behavior. The plaintiffs allege that the Board of Selectmen is biased against them, but they fail to provide any competent evidence that the Board of Selectmen will not conduct a fair hearing. The only evidence presented by the plaintiffs is affidavits from select residents of the Town. It should be noted that one of the affiants supporting the plaintiffs' claims was defeated at the polls by the current defendants, Patch Aff., ¶4, and her testimony is clearly suspect on this basis alone. Moreover, the plaintiffs assert that the Town's prior selectmen, two of whom are affiants for the plaintiffs, actually directed the plaintiffs to engage in the fraudulent behavior found by the Inspector General. Verified Complaint, ¶¶21-23. Finally, as noted in the Memorandum in support