of the Town's Motion to Strike these affidavits, the affidavits themselves are rife with opinions and beliefs, inadmissible hearsay and unsupported conclusions.

The Board of Selectmen strongly denies the plaintiffs' inflammatory and unfounded claims. See Patch Aff., ¶¶ 45-50.[9] The Board of Selectmen scheduled the disciplinary hearing only after receiving the findings and recommendations of the state Inspector General. Clearly, the Board of Selectmen would be remiss in its obligations as the chief executive body of the Town, were it to simply ignore the disturbing findings of the Inspector General that the plaintiffs engaged in fraudulent conduct. In light of these facts the notion that the Board is biased against the plaintiffs is patently absurd.

In addition to claiming that she will be unlawfully deprived of a protected property interest in her employment, absent the requested injunction, Cahill also claims that she will be deprived of a liberty interest in her reputation. Contrary to Cahill's assertion in this regard, she has not been deprived of any liberty interest. An individual has a liberty interest in his or her reputation only when the charges against that individual are defamatory and stigmatizing. Wilmarth v. Town of Georgetown, 28 Mass. App. Ct. 697, 704, 555 N.E.2d 597, 602 (1990) (citing Paul v. Davis, 424 U.S. 693, 709-10 (1976)). Even in such circumstances, the plaintiff is entitled only to a pre-disciplinary hearing at which she has the opportunity to respond to the charges against her. Wilmarth, at 705. Thus, in Wilmarth, the Massachusetts Appeals Court concluded that a pre-

---

[9] The only attempt by the plaintiffs to suggest an ulterior motive for the Board's disciplinary action is a claim that defendant Snow wants to appoint his brother to Kingsley's position. Verified Complaint, ¶40. This claim is based upon inadmissible hearsay and is the subject of a Motion to Strike by the Town, and the evidence at trial will demonstrate that this outrageous allegation is absolutely false. In any event, the alleged ulterior motive of one Board member cannot be ascribed to the entire Board, which has been unanimous in all of its actions underlying this litigation. Cf. Scott-Harris v. City of Fall River, 134 F.3d 427, 438-39 (1997) (rejecting allegation of former director of city's social service department, that city violated her First Amendment rights by eliminating director's position, absent evidence that more than two of six members of city council who voted for ordinance acted with intent to punish director for protected speech), reversed on other grounds, Bogan v. Scott-Harris, 423 U.S. 44, 118 S.Ct. 966 (1998).

16

disciplinary hearing provided the plaintiff with an opportunity to "clear his name and to present his case to the selectmen for retention of his position both on the merits of the charges and on the basis of his statutory tenure rights." Id.

In this matter, Cahill will have an opportunity to defend her actions before the Board of Selectmen. Cahill has made no allegation, nor could she, that the Board of Selectmen does not intend to provide her with a full opportunity to present any evidence or arguments in defending herself, and the notice scheduling the hearing specifically states that she will have such opportunity. Patch Aff., Ex.13. Furthermore, Cahill has elected to have the hearing occur in public, rather than in executive session—a request that Board has honored. Patch Aff., ¶ 38. Therefore, Cahill will have every opportunity to present both to the Board of Selectmen and the public at large any evidence or argument that she believes will clear her name.

Moreover, a constitutional liberty interest is triggered only if the statements at issue are defamatory. Wilmarth, 28 Mass. App. Ct. at 699 n.7 (Fourteenth Amendment only protects against "defamatory charges that tend to severely damage one's reputation and impose a stigma that would interfere with one's ability to take advantage of future employment opportunities"). In this case, Cahill has actually **admitted** to the Inspector General that she misled the investigator during the first investigation by making false statements and fabricating documents. Verified Complaint, Ex. C, pp. 3-4. Accordingly, Cahill cannot claim that the charges against her are defamatory. See Stone v. Essex County Newspapers, Inc., 367 Mass. 849, 858, 330 N.E.2d 161, 168 (1975) (defamation claim against a public official requires showing that the statement is false and made with actual malice).

In light of the above, it is clear that the Board of Selectmen is extending to the plaintiffs far greater procedural opportunities than they are entitled to receive. Therefore, any procedural due process claim asserted by the plaintiffs is unlikely to succeed on the merits, and the plaintiffs' request for injunctive relief must be denied.

c. <u>Plaintiffs are not likely to succeed on a substantive due process claim</u>

To the extent the plaintiffs' Complaint is intended to assert a substantive due process claim, such claim will also fail because plaintiffs have not identified the deprivation of a "fundamental right" or conduct so egregious as to shock the conscience. A substantive due process claim, unlike a procedural due process claim, must be based upon an explicit or judicially recognized **fundamental** constitutional right. Lamoureux v. Haight, 648 F. Supp. 1169, 1175 (D. Mass. 1986). The United States Supreme Court has observed that the protections of substantive due process "have for the most part been accorded to matters relating to marriage, family, procreation, and the right to bodily integrity." Albright v. Oliver, 114 S.Ct. 807, 812 (1994); see also Faerber v. City of Newport, 51 F.Supp.2d 115, 123 (D.R.I. 1999). "Such rights include, for example, the Fourth Amendment right to be free from excessive force; the Fourth Amendment right to be free from unreasonable seizures of personal property; the Eighth Amendment right to be free from cruel and unusual punishment; and the judicially recognized substantive constitutional right 'to be free of state intrusions into realms of personal privacy and bodily security through means so brutal, demeaning, and harmful as literally to shock the conscience of a court.'" Lemoureux, 648 F.Supp. at 1175 (citations omitted).

Therefore, even if plaintiffs could argue that they have a property interest in their position, they could not demonstrate that such an interest is the type of "fundamental"

18

right protected by the substantive Due Process Clause. See Faerber, 51 F.Supp.2d at 123. In Faerber, the District Court for the District of Rhode Island, relying on the First Circuit's decision in Coyne v. Sommerville, 972 F.2d 440 (1st Cir. 1992) (affirming dismissal of substantive due process claim predicated upon denial of promotion) explicitly held that "the right not to be fired without certain procedures is **not** a fundamental right that raises issues of substantive due process." 51 F.Supp. at 123 (emphasis added). The Faerber Court went on to note that the plaintiff's "firing may raise procedural due process concerns where the state has mandated a termination process..., but it does not reach the higher threshold of a fundamental right." Id.

If the alleged retaliatory firing of the plaintiff in Faerber and the alleged unlawful denial of promotion to the plaintiff in Coyne did not implicate "fundamental rights" protected under the substantive Due Process Clause, it is clear that the plaintiffs' assertions in this case likewise fail to sustain a substantive due process claim.

In the alternative, the plaintiffs' substantive due process claim must be dismissed because plaintiffs have failed to allege conduct by the Board of Selectmen that was "shocking or violative of universal standards of decency." Licari v. Ferruzzi, 22 F.3d 344, 350 (1st Cir. 1994); Furtado v. Bishop, 604 F.2d 80, 95 (1st Cir. 1979), cert. denied, 444 U.S. 1035 (1980). It is not sufficient to merely allege that the defendants abused their legal authority, **or even that they committed outright violations of state law**. Creative Environments, Inc. v. Estabrook, 680 F.2d 822, 833 (1st Cir.), cert. denied, 459 U.S. 989 (1982). "In the substantive due process context, the requisite arbitrariness and caprice must be stunning, evidencing more than humdrum legal error." Amsden v. Moran, 904 F.2d 748, 754 (1st Cir. 1990), cert. denied, 498 U.S. 1041 (1991); see also Chongris v.

Board of Appeals of Andover, 811 F.2d 36, 42 (1st Cir. 1987) ("To be sure, the Board was wrong... But the mere fact that a municipal board zigged when it should have zagged, without more, will not serve to engage the heavy-duty machinery of the Civil Rights Acts"; "even abridgments of state law **committed in bad faith** do not necessarily amount to unconstitutional deprivations of due process") (emphasis added).

Here, it cannot credibly be argued that the defendants are acting in a manner that shocks universal standards of decency. To the contrary, as established above, the Board of Selectmen is: (1) undertaking its obligations as chief executive body of the Town to investigate the findings of an independent state agency that the plaintiffs committed illegal and fraudulent acts in an effort to undermine an investigation regarding Kingsley's violation of the public bidding laws; and (2) providing the plaintiffs with a pre-disciplinary hearing, although none is required under the Town's Personnel Policies. It is simply bizarre for the plaintiffs to argue that these laudable actions comprise violations of the plaintiffs' due process rights.

Since the plaintiffs have alleged neither the deprivation of a fundamental constitutional right nor conduct that is "shocking or violative of universal standards of decency," any substantive due process claim asserted by the plaintiffs must fail, and the plaintiffs' request for injunctive relief should be denied on this additional basis.

2. The Plaintiffs Cannot Establish That They Will Suffer Irreparable Harm Without Injunctive Relief

To obtain injunctive relief, a plaintiff must demonstrate that without the requested relief, he will suffer harm that is not capable of remediation by final judgment in law or equity. Packaging Industries Group, 380 Mass. at 617. If the plaintiffs are terminated and can later establish that they had protected interests in their employment, they can

assert state-law claims for breach of contract or wrongful termination. Such actions would provide adequate post-deprivation remedies, and the plaintiffs should not be permitted to obtain an injunction under a civil rights theory, rather than asserting such a breach of contract action when and if they are terminated. "[W]here state officials violate the terms of an employment contract that does not create a constitutional 'property' interest in the job itself, the proper remedy lies in a suit for breach of contract, not as 1983 action." Bleeker v. Dukakis, 665 F.2d 401, 403 (1st Cir. 1981).[10]

Since the plaintiffs clearly would have an adequate remedy at law, were they to prove successful in their claims, the plaintiffs are not entitled to injunctive relief.

### 3. A Balancing of Equities Weigh In Against The Relief Requested

The plaintiffs' motion should also be denied because a balancing of the equities clearly weighs in the Town's favor. The Board of Selectmen is seeking to exercise its rights under the Town's Personnel Policies. Even more importantly, the Board is seeking to fulfill its obligation to supervise Town employees to ensure that the public interest is being served. In light of the Inspector General's conclusions that the plaintiffs fabricated documents, violated public bidding laws and interfered with an investigation of those violations, the Town and the public at large would be ill served were the plaintiffs to succeed in their attempts to undermine this important process. Moreover, such an injunction would set a dangerous precedent, whereby any Town employee put on notice of possible disciplinary action would be able to concoct bizarre bias claims and demand the appointment of an outside hearing officer, thereby effectively negating the explicit

---

[10] As the Court of Appeals stated in Medina Jimenez v. Almodovar, 650 F.2d 363, 370 (1st Cir. 1981), "[a] mere breach of contractual right is not a deprivation of property without constitutional due process of law. Bishop v. Wood, 426 U.S. 341, 349-50, 96 S.Ct. 2074, 2079-80, 48 L.Ed.2d 684 (1976). Otherwise, virtually every controversy involving an alleged breach of contract by a government or a governmental institution or agency or instrumentality would be a constitutional case."

21

provision in G.L. c.31, §41, that provides that the Board of Selectmen has the sole discretion to appoint such an outside hearing officer. Not only would this undermine the statute and the Personnel Policies, but it would comprise an unwarranted added expense to the Town. More importantly, the Board of Selectmen has a responsibility to determine whether employees that have been accused of participating in moral turpitude actually did participate, and whether those employees should be disciplined.

Conversely, the plaintiffs have remedies for any harm that they might claim to suffer without the injunction. A balancing of these harms demonstrates that the issuance of injunctive relief would have a more harmful and irreversible effect on the Town than would the denial of such relief have on the plaintiffs.

4. An Injunction would be Adverse to the Public Interest

Where an injunction request involves a governmental body seeking to undertake its responsibilities under state and local law, the Court must consider whether the requested relief is in the public interest. Commonwealth v. Mass. CRINC, 392 Mass. 79, 89, 466 N.E.2d 792, 798 (1984). As noted, the Board of Selectmen has a responsibility as the governing body of the Town to enforce the laws of the state. Where an independent investigator from a state agency, such as the Inspector General, has concluded that two government employees have misled investigators and fabricated documents, the Board of Selectmen must act upon this information. It would be unconscionable for the Board of Selectmen not to initiate disciplinary proceedings under such circumstances. Here, the two employees have been provided with notice of the allegations against them and will be provided with an opportunity to respond to the charges. Clearly, it is in the public interest for the Board of Selectmen to maintain a

Town free of corruption and fraudulent behavior. Accordingly, a granting of this temporary restraining order is against the public interest.

IV. <u>CONCLUSION</u>

For the foregoing reasons, the Board of Selectmen request that this Honorable Court deny the plaintiffs' Motion for a Temporary Restraining Order.

DEFENDANTS,

MICHAEL SNOW, JOHN PATCH,
and PETER BRULOTTE,

By their attorneys,

_____
Jonathan M. Silverstein (BBO# 630431)
Sarah N. Turner (BBO# 654195)
Kopelman & Paige, P.C.
 Town Counsel
31 St. James Avenue
Boston, MA 02116
(617) 556-0007

CERTIFICATE OF SERVICE
I hereby certify that a true copy of the above document was served upon the attorney of record for each other party by mail-hand on 2/19/04

23