UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

C.A. No. 04-30024-MAP

THERESA CAHILL and
MERLE KINGSLEY,

    Plaintiffs

v.

MICHAEL SNOW, JOHN PATCH, and
PETER BRULOTTE,

    Defendants

AFFIDAVIT OF BOARD OF
SELECTMEN MEMBER, JOHN
PATCH, IN SUPPORT OF THE
DEFENDANTS' OPPOSITION
TO PLAINTIFFS' MOTION
FOR TEMPORARY
<u>RESTRAINING ORDER</u>

    Now comes John Patch and hereby states and affirms the following under oath:

1. My name is John Patch. I am currently the Chairmen of the Board of Selectmen for the Town of Bernardston ("Town").

2. I have held been a member of the Board of Selectmen since May 8, 2001. The Board of Selectmen terms are for three years.

3. I replaced Richard Steward ("Steward") as Board of Selectmen. Steward had decided not to seek re-election.

4. On May 6, 2002, Michael Snow ("Snow") was elected over Janice Leh ("Leh") as Board of Selectmen.

5. In May 2003, Peter Brulotte ("Brulotte") replaced William Shores ("Shores") as Board of Selectmen, when Shores decided not to seek re-election.

6. Theresa Cahill ("Cahill") is employed as the Administrative Assistant to the Board of Selectmen. Cahill serves at the will of the Board of Selectmen. A copy of Cahill's Employee Form is attached hereto as Exhibit 1.

7. Cahill has acknowledged that she reviewed the Town's Personnel Policies. A copy of acknowledgment is attached hereto as Exhibit 2.

8. Cahill's job duties include coordinating with the Department Heads, running the day-to-day operations of the Town, drafting the minutes of the Board of Selectmen meetings, and drafting correspondences from the Board of Selectmen.

9. Merle Kingsley ("Kinglsey") is employed as the Highway Superintendent.

10. Kingsley's job duties include supervising the Highway Department staff, preparing budgets and keeping detailed financial records, including appropriation accounts and expenses, and maintaining the equipment and building. A copy of Highway Superintendent Job Description is attached hereto as Exhibit 3.

11. Kingsley claims that, in March 2001, the prior Board of Selectmen, comprised of, Steward, Shores, and Leh, reappointed Kingsley for a three year term. If this were true, Kingsley would be required to seek reappointment in March 2004.

12. I have thoroughly searched the official records regarding appointments in Town Hall, including minutes of the Board of Selectmen meetings in March 2001. If the Board had voted to re-appoint Kingsley during that period such vote would have to be reflected in the Board of Selectmen minutes. There is no such vote described in the minutes. The only document that I have located relating to such an appointment is an appointment form, purportedly signed by Shores and Steward on March 7, 2001, but not signed by the Town Clerk until May 9, 2001.

This document purports to appoint Kingsley for a three year term. A copy of the appointment form is attached hereto as <u>Exhibit 4</u>.

13. Such an appointment of Kingsley for three years would be inconsistent with prior appointments, which were only for one year. Copies of prior appointments are attached hereto as <u>Exhibit 5</u>.

14. Such an appointment would also be inconsistent with Section 6(L) of the Town's Personnel Policies, which specifically provides that "Employment with the Town has no specified term or length." Therefore, as Chairman of the Board of Selectmen, I would view any appointment of an employee for a specific term as simply requiring that employee to seek reappointment at the expiration of such term.

15. I have never been present when the Board of Selectmen has voted to appoint Kingsley as the Highway Superintendent. Indeed, in or around March 2003, Cahill presented individual Board members with a document, attached to Verified Complaint, as <u>Exhibit M</u>, that purported to appoint Kingsley to a one-year term as Highway Superintendent.

16. Without the Board having voted on such appointment, Snow and Shores signed this document. I refused to do so absent a vote by the Board of Selectmen. When I called to Snow's attention that he had signed a document purporting to appoint Kingsley to a one-year term without a Board of Selectmen vote, he stated he had not realized what he was signing, and stated at an open Board of Selectmen meeting that he was retracting his signature.

17. Cahill and Kingsley work under the direction and at the pleasure of the Board of Selectmen. Neither Cahill nor Kingsley is a civil service employee.

18. The Board of Selectmen is the appointing authority for both Cahill and Kingsley. A copy of the Town's Personnel Policies is attached hereto as Exhibit 6. See also Exhibit 3.

19. Pursuant to Section 4 of the Town's Personnel Policies, the "policy shall be administered by the Board of Selectmen who shall be the final authority in all personnel matters." See Exhibit 6.

20. The Town's Personnel Policies also provide the Board of Selectmen the right to preside over an appeal of a disciplinary or termination decision. See Exhibit 6, § 6(L).

21. I am aware that in March 2001, right around the time Kingsley's claimed reappointment, the Inspector General conducted an investigation into the procurement of a sand contract after receiving a complaint from Robert Mitchell ("Mitchell").

22. The current members of the Board of Selectmen (i.e., the defendants in this action) were not members during the beginning of the investigation. I became a Board of Selectmen at the very end of the investigation.

23. At that time, the Board of Selectmen consisted of Steward, Shores, and Leh, all of whom have signed affidavits supporting the plaintiffs' claims in this case. See Verified Complaint, Exhibits G, H, and I.

24. On May 22, 2001, after its investigation, the Inspector General concluded that the contract to Cersosimo was invalid and a violation of G.L. c.30B. See Verified Complaint, Exhibit B.

25. The Town later settled the claim with Mitchell. A copy of the settlement letter, dated October 25, 2001, and the General Release executed by Mitchell, is attached hereto as Exhibit 7.

26. In May 2003, I was backing up files on the computer disks in the Board of Selectmen's office. While I was doing this, I discovered a file titled "Sand." I opened the file and saw two documents that appeared suspicious. A copy of the file is attached hereto as Exhibit 8.

27. The first document I discovered was titled "Bid Notice," dated September 13, 2000. This document invited bids for the procurement of a sand contract. A copy of the Bid Notice is attached hereto as Exhibit 9.

28. The second document I discovered was a letter dated October 12, 2000, from Kingsley to the Board of Selectmen. In this letter Kingsley stated that he would like to choose Cersosimo Industries, Inc., over Mitchell because of the quality of sand. A copy of the letter dated October 20, 2000, from Kingsley to the Board of Selectmen, is attached hereto as Exhibit 10.

29. I viewed these documents as suspicious because, notwithstanding the dates indicated in the documents themselves, they had been saved on March 26, 2001, three days after the Inspector General notified the Town Treasurer to withhold payments for the procurement of sand due to an apparent G.L. c.30 violation. A copy of the letter dated March 23, 2001, to the Town Treasurer from the Inspector

General, requesting the withholding of further payments, is attached hereto as Exhibit 11.

30. I felt it was my duty to notify the Inspector General of these documents.

31. After I notified the Inspector General, the Inspector General re-opened the investigation into the procurement of the 2000 sand contract.

32. On December 9, 2003, the Inspector General sent a letter to my attention. This letter concluded that Kingsley and Cahill had interfered with the Inspector General's original investigation by misleading the investigator and fabricating documents. The Inspector General recommended that Kingsley and Cahill be terminated. See Verified Complaint, Exhibit C.

33. After receiving this letter, the Board of Selectmen determined that the Inspector General's conclusions warranted potential disciplinary action.

34. On December 12, 2003, the Board of Selectmen held an emergency meeting, at which time Kingsley and Cahill were notified that they were to be placed on administrative leave with pay.

35. On December 16, 2003, the Board of Selectmen provided Kingsley with a Notice of Hearing. The Notice informed him of the charges against him and that a disciplinary hearing was scheduled for January 7, 2004. The Notice also informed him that he could choose to have the hearing in executive session or in open session. Kingsley was also informed of his rights to have an attorney present during any discussions prior to the hearing and during the hearing. A copy of the Notice of Hearing, is attached hereto as Exhibit 12.

36. On December 16, 2003, the Board of Selectmen provided Cahill with a Notice of Hearing. The Notice informed her of the charges against her and that a disciplinary hearing was scheduled for January 7, 2004. The Notice also informed her that she could choose to have the hearing in executive session or in open session. Cahill was also informed of her rights to have an attorney present during any discussions prior to the hearing and during the hearing. A copy of the Notice of Hearing, is attached hereto as Exhibit 13.

37. At the December 16, 2003, Board of Selectmen meeting, Kingsley was asked whether he wanted the hearing in executive or open session. Kingsley elected to have the hearing held in open session.

38. At the December 16, 2003, Board of Selectmen meeting, Cahill elected to have her hearing held in open session, rather than executive session.

39. The Board of Selectmen voted unanimously to have the hearing held before it.

40. The hearing was postponed at the request of Kingsley and Cahill.

41. The hearing was then suspended indefinitely while the parties entered settlement negotiations.

42. At this time, the negotiations have failed.

43. I have not initiated contact to the media surrounding the hearings.

44. I have been contacted numerous times by the media to clarify or respond to comments made by Kingsley and Cahill.

45. I have not made any decisions or prejudgments in this matter.

46. I deny that I have ever attempted to demean, degrade or belittle Cahill.

1

Case 3:04-cv-30024-MAP    Document 10    Filed 02/19/2004    Page 8 of 19

# BERNARDSTON

## EMPLOYEE FORM

Please type or print neatly.

Name: _Theresa A. Cahill_

Employee #- _____

New Employee Information:

Address: _35 Lillians Way_
_Ervuing MA 01344_
Phone#: _413-259-9975_
Soc. Sec. # _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_
Birth Date: _10/15/53_
Marital Status: _Single_

Department: _Selectmen_
Position: _Administrative Assistant_
Employment Date: _10-86_
Grade/ Step: _____

Emergency Contact: _Merle Kingsley_
Emergency Phone: _413 648-5424_

Please complete the checklist below and return the information to the Treasurer's Office, along with this form. Any questions please call the Treasurer's Office at 648-5400. Thank you!

_____ 1-9, along with photocopies of identification (example: drivers license, s-s. card)

_____ M4 (state tax withholding form)

_____ W4 (federal tax withholding form)

_____ Franklin County Retirement form, along with a copy of your birth certificate, for full time employees (20 or more hours per week, 1040 or more hours per year) or an OBRA Deferred Compensation form for part-time or temporary help.
Does this employee currently participate in any other retirement plan? _yes_

Condition of Employment for New Employees

✓ Signed receipt of the Sexual Harassment Policy and Procedures

✓ Signed New Employee Checklist

_____ Work Permit, if under 18 students need to go to the P.V.R.S. Guidance Office to obtain)

The following forms are optional:
✓ Direct Deposit

-Health, Basic, and/or Optional Life Ins must be turned in to the Treasurer accompanied by the Plan forms within 30 days of the first date of employment

2

## NEW EMPLOYEE CHECKLIST

I have received or completed the following:
(Please check only those that apply to you)

- ✓ I-9, Employment Eligibility Verification Form

- ✓ M-4 (state tax form)

- ✓ W-4 (federal tax form)

    Franklin County Retirement Form, (along with a copy of birth certificate) for full-time employees (20 or more hours per week/ 1 040 or more hours per calendar year) or-an OBRA Deferred Compensation form part-time or temporary help

    Sexual Harassment Policy and Procedures

- ✓ Town Employee Personnel policy

- ✓ New Employee Benefit Information

Do you currently participate in any other retirement plan? __yes__
If so, name of plan: __Roth IRA    Regular IRA__

I understand that if I choose to sign up for health and/or life insurance, applications must be turned into the Treasurer's Office, accompanied by insurance forms, within 30 days of my date of employment.

Any questions should be directed to the Treasurer's Office.

__8-26-02__   __Theresa G. Calif[?]__
Date         Employee's Signature

3

HIGHWAY SUPERINTENDENT

JOB DESCRIPTION

DEFINITION

    Supervisory, administrative and physical work in directing the operations of the Highway Department at the direction of the Board of Selectmen.

GENERAL DUTIES

    Responsible for the safety and maintenance of public ways and sidewalks.

    Responsible for training, safety, and supervision of all Highway Department employees.

    Serves as Highway Department Foreman, working with and supervising other members of the crew.

    Maintains adequate records, grants, state aid paperwork and submits them in a timely fashion. Performs other administrative functions related to running the Department.

    Has general charge of Town Garage and all Highway Department equipment.

SPECIFIC DUTIES

    I. Personnel Management
        A. recommends applicants for hire to the Board of Selectmen.
        B. supervises all work done by the crew.
        C. assists Selectmen in evaluating performance of crew.

    II. Financial Management
        A. prepares detailed estimate of budget for next fiscal year and works closely with the Selectmen and Finance Committee on modifications.
        B. keeps detailed financial records, including:
            weekly payroll records
            appropriation accounts line-item expenses
            special revenue accounts (e.g. state & federal monies) expenses
            copies of bills needed for reimbursement by state and federal agencies.
        C. submits requests for reimbursement for all departmental expenses in a timely manner.

-2-

HIGHWAY SUPERINTENDENT

SPECIFIC DUTIES (cont'd.)

   III.  Work Management and Planning
- A. prepares and submits weekly schedules of work to be completed.
- B. carries out maintenance and reconstruction of public ways in accordance with approved schedule of work.
- C. keeps adequate record of work in progress to be submitted in writing upon request to the Selectmen.
- D. prepares and submits long-range schedule for road improvements/reconstruction.

   IV.  Maintenance of Equipment and Buildings
- A. maintains an updated inventory of departmental equipment and supplies.
- B. prepares and updates a long-term maintenance and replacement schedule for all equipment.
- C. performs the maintenance outlined in schedule.
- D. keeps the Town Garage and peripheral structures in good repair and sightly fashion.

SUPERVISION

    Works under the administrative direction of the Board of Selectmen.

JOB ENVIRONMENT

    Operates public works equipment such as pickup trucks, trucks in excess of 26,001 pounds, road graders, one ton dump trucks, and other light and heavy equipment.

    Uses power tools and hand tools, such as jack hammers and other pneumatic tools. Other equipment may include chippers, chain saws, lawn mowers, portable electric tools, and the like.

    Work may require heavy lifting, exposure to harsh weather conditions, dust, fumes, dangerous road conditions, and long, often irregular hours.

MINIMUM QUALIFICATIONS

Education and Experience

High school education or G.E.D. equivalent; one to two years' experience in public works construction and maintenance activities in a supervisory capacity

Knowledge, Ability, and Skill

Working knowledge of public works equipment and mechanics

Working knowledge of construction and maintenance procedures

Ability to perform heavy manual labor under all weather conditions

4

# The Commonwealth of Massachusetts

Town of Bernardston

To _Merle Kingsley_: We, the Selectmen of _Bernardston MA_ by virtue of the authority vested in us by the laws of the Commonwealth, do hereby appoint you _Superintendent of Highways for a three year term. Term to expire on March 31, 2004._

Given at _Bernardston_ this _7th_ day of _March_ 2001.

Recorded _5-9_ A.D. 2001

Attest: _Judith A. DeClusky_ , Town Clerk

Selectmen of Bernardston

Form 452 HOBBS & WARREN - Boston

5

# The Commonwealth of Massachusetts

To _Merle Kingsley_
_Bernardston_
_Marrick Road_ : We, the Selectmen of _Bernardston_
by virtue of the authority in us vested by the laws of the Commonwealth, do hereby appoint you
_Highway Superintendent for one year term._

_Term to expire March 31, 1994_

Given at _Bernardston_ this _Tenth_ day of _March_ 19_93_.

Recorded _3-19_ A.D. 19_93_

Selectmen of _Bernardston_

Attest: _____ Town Clerk